AUGUSTINE EDELIN, Plaintiff-Appellant, v. WESTLAKE COMMUNITY HOSPITAL, Defendant-Appellee.

First District (3rd Division)   No. 86—2055

Opinion filed June 17, 1987.

Dombrowski & Sorensen, of Chicago (Joan Sorensen, of counsel), for appellant.

Cassiday, Schade & Floor, of Chicago (Michael J. Gallagher, Joseph A. Camarra, and Michael G. Thomas, of counsel), for appellee.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff Augustine Edelin sought damages in two counts from defendant Westlake Community Hospital for injuries allegedly sustained when she slipped and fell in the hospital lobby after being discharged as a patient from the hospital. After the jury failed to reach a verdict on count II, the trial court entered a directed verdict for defendant and then entered judgment on the verdict. Plaintiff appeals from that judgment, contending that, as to count II, she presented sufficient evidence to withstand a motion for a directed verdict.

Count I of the complaint alleged premises liability. The trial court directed a verdict in favor of defendant as to count I at the close of all the evidence, and plaintiff does not appeal from that judgment. Count II alleged negligence: that defendant breached the standard of accepted care in the manner of discharging plaintiff and that defendant's acts or omissions proximately caused plaintiff's fall and injuries.

Prior to trial, pursuant to Supreme Court Rule 220 (107 Ill. 2d R. 220), defendant served plaintiff interrogatories regarding any experts whom plaintiff might call. Plaintiff did not respond to the interrogatories. When the trial began, plaintiff stated that she had no expert witnesses.

At trial, plaintiff testified that on June 4, 1981, she was discharged from Westlake following a hemorrhoidectomy, which had been performed nine days earlier. That morning, plaintiff had taken pain medication prescribed by Dr. Kelly. Plaintiff received no information regarding the discharge procedures.

From her room, plaintiff signalled the nurse that she was dressed and ready to leave. The nurse told her to come to the nurse's station, which plaintiff did, carrying her bags. Plaintiff testified that she inched her way toward the nurse's station, slipping and sliding due to her pain. Her difficulty would be obvious to anyone observing her, as it took approximately 20 minutes to get down the hallway. The attending nurse then told plaintiff that she should just leave.

In the elevator, plaintiff felt sweaty, dizzy and nauseous. As she walked toward the hospital entrance, plaintiff slipped and fell. Plaintiff testified that the floor was slick and a carpet buckled where it was taped down, but she was not sure what caused her to fall. She was subsequently admitted to a different hospital for alleged injuries to her back and legs.

Plaintiff then tendered Dr. John Kelly, her treating physician, as her intended expert on standard of care questions. Defendant objected because of plaintiff's failure to identify Dr. Kelly as an expert pursuant to Supreme Court Rule 220. The court ruled that Dr. Kelly's testimony would be limited to questions concerning his actual care and treatment of plaintiff.

Dr. Kelly testified that plaintiff had a normal recovery from surgery and that he considered her progress in walking to be normal. He saw plaintiff prior to discharge and found she had no problem walking. Plaintiff was given no pain medication on the day of her discharge, although she did receive a vitamin. The medications which plaintiff received on the previous day would not affect her ability to walk or her sensory abilities the following day. In regard to plaintiff's discharge, Dr. Kelly testified that plaintiff stated her husband could not pick her up until later in the day, and Dr. Kelly indicated that this would be no problem. Dr. Kelly informed the attending nurses that plaintiff would be leaving sometime later in the day.

Dr. Kelly stated further that he had "no knowledge of how patients leave the hospital, you know, specifically—on a specific patient." It was Dr. Kelly's understanding that the "normal course would be that somebody would accompany the patient to the *** first floor or to the car if—that's my understanding and has been my experience." When asked if he was familiar with defendant's discharge policies, Dr. Kelly replied: "The specific policies, no, but the normal policy *** that somebody would accompany a patient, yes. I am familiar with that policy, but I haven't studied the book of policies."

At the close of plaintiff's evidence, the trial court denied defendant's motion for a directed verdict.

Faye Culp, the attending nurse, testified for defendant that she observed plaintiff walking without difficulty on the day of her discharge. At about 9 a.m., Dr. Kelly had informed Culp that plaintiff could not get a ride home until later in the day. Shortly after 10 a.m. Culp was surprised to see plaintiff walking down the hall on her way out of the hospital. Plaintiff was accompanied by two men who were carrying plaintiff's suitcases. Plaintiff held the arm of one of the men. Culp, who was on her way to change an IV bottle for a patient, asked if plaintiff needed assistance, and plaintiff replied that she did not need any help. Culp told plaintiff that if she could wait a minute Culp would be right back. When Culp returned, plaintiff was gone.

Culp testified that it was defendant's general policy to walk with the patient to her car. This policy was established to protect both the patient and the hospital personnel. Culp did not discuss discharge pro-

cedure with plaintiff prior to her leaving because she had not expected plaintiff to leave so early.

Mary Ann Parker, an emergency room nurse for defendant, testified for defendant that she treated plaintiff in the emergency room on the night of June 4, approximately 12 hours after plaintiff was discharged. Plaintiff told Parker that she had fallen in the hospital lobby that morning, and that she was not alone at the time, but had been accompanied by two men. Plaintiff complained of rectal pain and bleeding, but did not complain of other injuries as a result of the fall.

The trial court denied defendant's motion for a directed verdict as to count II at the close of all the evidence. When the jury was unable to reach a decision, defendant moved for a judgment notwithstanding the jury's inability to arrive at a verdict. The trial court stated that it had erred in not previously directing a verdict as to count II at the close of plaintiff's evidence, and consequently also at the close of all the evidence. The court granted defendant's motion and entered judgment in defendant's favor as to count II.

■ Plaintiff contends that she presented sufficient evidence to withstand a directed verdict in favor of defendant as to count II. A directed verdict is proper where all the evidence, viewed in a light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) The trial court found that it should have directed a verdict at the close of plaintiff's evidence because no expert testimony was offered. Plaintiff admits that no expert witness testified, but urges us to consider the nonexpert testimony which was offered as proof sufficient to again submit the issue of liability to a jury.

■ A hospital's duty to its patients requires it to conform to the legal standard of reasonable conduct in light of the apparent risk. (*Ohligschlager v. Proctor Community Hospital* (1973), 55 Ill. 2d 411, 303 N.E.2d 392; *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253, *cert. denied* (1966), 383 U.S. 946, 16 L. Ed. 2d 209, 86 S. Ct. 1204.) A hospital is not an insurer of a patient's safety, but it owes the patient a duty of protection and must exercise a degree of reasonable care toward the patient as her known condition requires. (*Taylor v. City of Beardstown* (1986), 142 Ill. App. 3d 584, 491 N.E.2d 803; *Pickle v. Curns* (1982), 106 Ill. App. 3d 734, 435 N.E.2d 877.) Plaintiff must prove that the hospital failed to comply with the proper standard of care which guides institutions holding themselves out as devoted to the care and saving of human life and that this failure resulted in the complained-of injury.

*Taylor v. City of Beardstown* (1986), 142 Ill. App. 3d 584, 491 N.E.2d 803; *Hansbrough v. Kosyak* (1986), 141 Ill. App. 3d 538, 490 N.E.2d 181.

■ At times, a hospital functions beyond the narrow sphere of medical practice. While various medical judgments are necessarily a part of hospital administration, they do not constitute the entirety of a hospital's function. Accordingly, because of the diversity inherent in hospital administration, a broad range of evidence should be available to establish the applicable standard of care. *Greenberg v. Michael Reese Hospital* (1980), 83 Ill. 2d 282, 415 N.E.2d 390; *Darling v. Charlestown Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253; *Mielke v. Condell Memorial Hospital* (1984), 124 Ill. App. 3d 42, 463 N.E.2d 216.

One type of information which aids a jury in determining a hospital's duty to a patient is evidence of a hospital's customs or policies. While these policies are not solely determinative of the standard of care (*Greenberg v. Michael Reese Hospital* (1980), 83 Ill. 2d 282, 415 N.E.2d 390; *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 216), the failure of a hospital to follow its policies can be evidence of a breach of the hospital's duty to a patient. *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 216; *Pickle v. Curns* (1982), 106 Ill. App. 3d 734, 435 N.E.2d 877.

■ We believe that expert testimony is not necessary in this case to establish defendant's standard of care. Generally, in a medical malpractice case, plaintiff must offer expert testimony to establish the standard of care unless defendant's conduct is so grossly negligent or the treatment so common that a lay person could readily understand it. (*Taylor v. City of Beardstown* (1986), 142 Ill. App. 3d 584, 491 N.E.2d 803; *Mielke v. Condell Memorial Hospital* (1984), 124 Ill. App. 3d 42, 463 N.E.2d 216.) The present case, however, does not rise to the level of medical malpractice. The gravamen of the action is not negligence in furnishing medical treatment, but instead concerns the breach of an administrative duty to provide discharged patients with an escort according to the hospital's own policy. See *Johnson v. St. Bernard Hospital* (1979), 79 Ill. App. 3d 709, 399 N.E.2d 198 (administrative expertise, not medical expertise, is required to prove duty to enforce rules adopted by hospitals to insure adequate patient care); see also *McCormack v. Mt. Sinai Hospital* (N.Y. App. Div. 1981), 85 A.D.2d 596, 444 N.Y.S.2d 702 (hospital's duty to provide wheelchair to patient awaiting discharge is administrative in nature).

■ Moreover, even viewed as a medical malpractice action, the

present case falls under the exception to the general rule requiring expert testimony because the alleged negligence relates to matters of common knowledge. (See *Mielke v. Condell Memorial Hospital* (1984), 124 Ill. App. 3d 42, 463 N.E.2d 216.) The matter of a hospital's liability for a patient's fall does not automatically require expert testimony. Such a matter is not a technical area which is outside the comprehension of laypersons. See, *e.g., Self v. Executive Committee of Georgia Baptist Convention of Georgia, Inc.* (1980), 245 Ga. 548, 266 S.E.2d 168 (no expert testimony necessary in simple negligence action involving patient's fall in hospital bathroom); see generally Annot., 40 A.L.R.3d 515, sec. 4a (1971); Annot., 36 A.L.R.3d 1235, sec. 3.5 (Supp. 1986).

In *Block v. Michael Reese Hospital* (1981), 93 Ill. App. 3d 578, 417 N.E.2d 724, plaintiff, a patient in the defendant hospital, was taken in a wheelchair from the X-ray department to her floor. She was left at the nurse's station, either seated in another chair or standing, and she fell and injured herself. A nurse testified that the hospital rule required, for the patient's safety and convenience, that the escort remain with the patient at the nurse's station until the patient was taken to her room. The court found that the hospital rules could not conclusively determine the standard of care owed by defendant, but that the rules were relevant and that the record contained competent evidence to show that the hospital had a duty to return the patient safely to her room, and that the hospital breached that duty. The court affirmed a directed verdict for plaintiff where defendant failed to present sufficient evidence to support any valid defense.

■ Similarly, in the present case the record contains competent evidence to show that defendant had a duty to escort the discharged plaintiff safely to the first floor or her car and that defendant's breach of that duty proximately caused plaintiff's injuries. Contrary to defendant's contention and the trial court's post-trial decision, we find that at the close of plaintiff's evidence it would have been improper to direct a verdict in favor of defendant. Dr. Kelly testified for plaintiff that he was familiar with defendant's normal discharge policy, which was to accompany a discharged patient to the first floor or to the patient's car. Dr. Kelly also testified that he had "no knowledge of how patients leave the hospital, you know, specifically—on a specific patient." We do not find this statement to be a direct contradiction of his testimony regarding the general hospital policy requiring an escort for discharged patients. Instead, it would merely go to the weight which the jury might give his testimony. Plaintiff testified that hospital personnel did not escort her downstairs and that due to

864

her weakened condition and the absence of an escort she fell and injured her back. The numerous impeachments of her testimony to which defendant points should be weighed by the trier of fact.

■ The issue of negligence is ordinarily a factual question for the jury. (*Ney v. Yellow Cab* (1954), 2 Ill. 2d 74, 117 N.E.2d 74; *Johnson v. St. Bernard Hospital* (1979), 79 Ill. App. 3d 709, 399 N.E.2d 198.) The standard of care to which a hospital must adhere, and the hospital's failure to exercise the necessary degree of care, are factual questions. (*Greenberg v. Michael Reese Hospital* (1980), 83 Ill. 2d 282, 415 N.E.2d 390; *Magana v. Elie* (1982), 108 Ill. App. 3d 1028, 439 N.E.2d 1319.) After viewing the evidence in a light most favorable to plaintiff, we hold that the evidence was not so overwhelmingly in favor of defendant that a contrary verdict could not stand. The evidence presented by plaintiff was sufficient to create a jury question as to defendant's negligence. It was error to grant defendant's post-trial motion for a judgment notwithstanding the jury's inability to reach a verdict.

Accordingly, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

RIZZI and FREEMAN, JJ., concur.