(Nos. 65813, 65817, 65822 cons.—

FRANKLIN ADDISON, Appellee, v. JAMES M. WHITTENBERG, M.D., *et al.*, Appellants.

*Opinion filed September 22, 1988.*

Gary D. McConnell and Andrew D. Dillon, of Shepherd, Sandberg & Phoenix, P.C., of St. Louis, Missouri, for appellant James M. Whittenberg.

Michael F. Dahlen and Richard A. Green, of Feirich, Schoen, Mager & Green, of Carbondale, for appellant Randolph Hospital d/b/a Chester Memorial Hospital.

Dennis E. Rose, of Donovan, Rose, Nester & Szewczyk, P.C., of Belleville, for appellant Shoss Radiological Group, Inc.

Lee Ellen Starkweather and James W. Sanders, of James W. Sanders & Associates, of Marion, for appellee.

JUSTICE MILLER delivered the opinion of the court:

The plaintiff, Franklin Addison, brought this action in the circuit court of Randolph County against the defendants, James M. Whittenberg, M.D., Shoss Radiological Group, Inc., and the Randolph Hospital District, d/b/a Chester Memorial Hospital, alleging medical malpractice. Following a hearing, the trial judge granted the defendants' motions for summary judgment. The appellate court reversed that decision and remanded the cause for further proceedings. (159 Ill. App. 3d 585.) We allowed the defendants' separate petitions for leave to appeal (see 107 Ill. 2d R. 315(a)), and the causes were consolidated for purposes of argument and disposition.

The plaintiff was involved in an automobile accident on January 17, 1981, and was admitted that day to Chester Memorial Hospital, in Chester. There, X rays were taken of the plaintiff's spine and neck area, and he was treated for a strained neck and bruised shoulder. The plaintiff was discharged from Chester Memorial Hospital on January 20, 1981. Later that day the plaintiff entered a Veterans Administration hospital in Marion, where doctors, on the basis of their own X rays and examination of the plaintiff, diagnosed him as having a fractured vertebra of the neck. On January 22 the plaintiff was transferred to a Veterans Administration hospital in St. Louis for further treatment.

The plaintiff commenced the instant action on January 17, 1983, filing a five-count complaint. The basis for the action was the failure by the defendants to make a diagnosis of the plaintiff's broken vertebra during his three-day stay at Chester Memorial Hospital. Counts I

and II of the complaint were directed against the hospital. Count I alleged that the hospital was negligent based on its staff's failure to diagnose the plaintiff's condition, and count II alleged that the hospital was negligent for allowing the release of the plaintiff without a correct diagnosis having been made. Counts III and IV of the complaint were directed against Dr. James Whittenberg, the plaintiff's attending physician at Chester Memorial Hospital. Count III alleged that Dr. Whittenberg negligently failed to diagnose the fracture of the cervical spine during the plaintiff's stay at the hospital and negligently failed to order tests that would have disclosed that condition; count IV alleged that Dr. Whittenberg was negligent for releasing the plaintiff without having made the correct diagnosis. Count V was directed against Shoss Radiological Group, Inc., which provided radiology services at Chester Memorial Hospital, and alleged negligence in the X rays that were taken of the plaintiff.

The three defendants answered the complaint, denying the allegations of negligence. The defendants later filed separate motions for summary judgment. In support of their motions the defendants submitted the plaintiff's responses to certain interrogatories concerning the identities and opinions of the plaintiff's expert witnesses. The plaintiff identified four physicians whom he intended to use as witnesses at trial; three of the experts—Dr. Baysinger, Dr. Knoke, and Dr. Lee—had treated the plaintiff while he was a patient at the Veterans Administration hospital in Marion, and the fourth expert—Dr. Riaz—had treated the plaintiff at the Veterans Administration hospital in St. Louis. In response to the interrogatories, counsel for the plaintiff stated that the witnesses' testimony would concern the condition of the plaintiff at the time of his admission to the two Veterans Administration hospitals and the possible cause of his in-

jury. Also, counsel indicated that the experts had concluded that the plaintiff, upon admission to the Veterans Administration hospitals, had a fracture of the cervical spine, which could have been caused by the automobile accident. In their motions, the defendants contended that Supreme Court Rule 220 (107 Ill. 2d R. 220), which requires the disclosure in discovery of the identities and opinions of experts expected to be called as witnesses during trial, would preclude the plaintiff from presenting, at a trial, any additional expert testimony regarding the defendants' conduct.

In further support of their motions for summary judgment, the defendants offered excerpts from the deposition testimony of Dr. Whittenberg and Dr. Shoss, principal owner of defendant Shoss Radiological Group, Inc., and excerpts from the deposition testimony of the four expert witnesses identified by the plaintiff. Dr. Whittenberg testified that he relied on a report by the radiologist, Dr. Shoss, in diagnosing and treating the plaintiff's condition. Dr. Whittenberg and Dr. Shoss maintained in their depositions that the X rays taken at the time of the plaintiff's admission to Chester Memorial Hospital were of diagnostic quality and that the X rays did not indicate the presence of a cervical fracture. The evidence deposition testimony of the plaintiff's four expert witnesses disclosed that none of the witnesses had seen the X rays or other records from Chester Memorial Hospital and that none of the witnesses had any opinion regarding the treatment received by the plaintiff at Chester.

In opposition to the motions for summary judgment, the plaintiff submitted a response and several affidavits. In an affidavit, plaintiff's counsel expressed his intention to call as a trial witness Dr. Knoke, who was one of the plaintiff's physicians at the Veterans Administration hospital in Marion; counsel did not explain what Dr. Knoke's

opinion would be, nor was an affidavit filed by Dr. Knoke. Counsel also submitted excerpts from the plaintiff's discovery deposition. In the deposition, the plaintiff testified that Dr. Whittenberg had said that the X rays would have to be sent to Cape Girardeau to be read; later, according to the plaintiff, Dr. Whittenberg told him that the X rays had not been read yet at Cape Girardeau, where Dr. Shoss maintained his office, but that he and another doctor had read them and that they were all right. Finally, counsel submitted affidavits by Juanita and Karl Addison, who apparently were relatives of the plaintiff. They attested that, at the time of the plaintiff's discharge from the Chester hospital, they overheard Dr. Whittenberg say that he had personally read the X rays and that he had not heard from the radiologist in Cape Girardeau.

The trial judge granted the defendants' motions for summary judgment. The plaintiff appealed that ruling, and the appellate court reversed. The appellate court believed that a genuine issue of material fact existed because, in the court's view, the evidence would support the drawing of several inferences favorable to the plaintiff. Specifically, the court reasoned that a trier of fact could infer that the plaintiff suffered the fractured vertebra in the automobile accident on January 17, 1981, that the fracture escaped diagnosis at Chester Memorial Hospital, and that the failure to make the diagnosis constituted negligence, because the fracture was, in the appellate court's words, "readily discovered" upon the plaintiff's admission to the Veterans Administration hospital in Marion on January 20. (159 Ill. App. 3d at 590.) The appellate court also rejected the defendants' argument that Supreme Court Rule 220 would preclude the plaintiff from offering at trial any expert testimony different from what had already been disclosed in discovery. The appellate court suggested that the plaintiff had

not yet completed discovery when the motions for summary judgment were granted, and the court did not believe that the rule would prevent the plaintiff's experts from later examining the Chester Memorial Hospital records and forming an opinion at that time.

The purpose of summary judgment is not to try a question of fact, but to determine whether one exists. (*Puttman v. May Excavating Co.* (1987), 118 Ill. 2d 107, 112.) A motion for summary judgment is to be granted if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) The pleadings, depositions, admissions, and affidavits on file must be construed against the movant and in favor of the opponent (*In re Estate of Whittington* (1985), 107 Ill. 2d 169, 177), but the opponent of the motion cannot rely simply on his complaint or answer to raise an issue of fact when the movant "supplies facts which, if not contradicted, would entitle such a party to a judgment as a matter of law" (*Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380). An order allowing summary judgment will be reversed on appeal if the reviewing court determines that a genuine issue of material fact exists. *Department of Revenue v. Heartland Investments, Inc.* (1985), 106 Ill. 2d 19, 31.

In support of their motions for summary judgment the defendants have argued, in this court as well as in the courts below, that Supreme Court Rule 220(d) would bar the plaintiff from introducing at trial any expert testimony not already disclosed. Defining the scope of an expert witness' trial testimony, Rule 220(d) provides:

> "To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings through interrogatories, depositions or requests to

produce, his direct testimony at trial may not be inconsistent with or go beyond the fair scope of the facts known or opinions disclosed in such discovery proceedings. However, he shall not be prevented from testifying as to facts or opinions on matters regarding which inquiry was not made in the discovery proceedings." (107 Ill. 2d R. 220(d).)

Noting that the plaintiff's expert witnesses had not examined the records of the plaintiff's treatment at Chester Memorial Hospital, the defendants contend that Rule 220(d) would limit the testimony of the plaintiff's experts to the statements already disclosed, which, the defendants believe, do not suggest any negligent conduct on their part.

In response, the plaintiff argues that any opinions formed by the experts in the future, upon their examination of the plaintiff's records from Chester Memorial Hospital, could qualify as "matters regarding which inquiry was not made in the discovery proceedings," and therefore within the exception expressed in Rule 220(d). Moreover, the plaintiff construes the provision in Rule 220(c)(3) requiring parties to "seasonably supplement" their responses to interrogatories as arguing against an inviolable deadline. Finally, the plaintiff contends that because the witnesses were treating physicians, having attended to him at the Veterans Administration hospitals in Marion and St. Louis following his automobile accident, they were outside the scope of Rule 220, and therefore their testimony would not be governed by the rule. See *Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226.

We do not believe that Rule 220 is relevant here, and therefore we need not consider the parties' contentions concerning its operation and effect. The question whether a genuine issue of material fact exists, sufficient to prevent entry of summary judgment, is to be deter-

mined on the basis of the pleadings, depositions, admissions, and affidavits on file at the time the motion is heard; even if Rule 220 were found to preclude a party from introducing at trial material not already disclosed in discovery, we do not see how the rule would make the existence of a genuine issue of material fact any more or less certain at the time the motion is considered. In opposing the motions for summary judgment in this case, the plaintiff made no attempt to present expert testimony different from what he had already disclosed. Thus, the trial judge's holding that Rule 220 would preclude the plaintiff from offering any further opinions regarding the defendants' conduct was unnecessary. For those reasons, we question the defendants' contention that Rule 220 has the effect of fortifying their right to summary judgment. By the same token, however, we do not believe that the possibility of further disclosures of expert opinion, even though done in compliance with the rule, will enable a party to avoid a summary judgment to which the movant is otherwise entitled at the time the motion is heard.

The defendants contend that the trial judge properly granted their motions for summary judgment because the plaintiff failed to submit anything contradicting their evidence that they were free from negligence. Dr. Whittenberg and Dr. Shoss, in their depositions, asserted that the X rays taken at Chester Memorial Hospital at the time of the plaintiff's admission were of diagnostic quality, and that the X rays did not indicate the presence of any fracture. Moreover, the defendants note that none of the expert witnesses identified by the plaintiff during discovery had seen the plaintiff's X rays and other records from Chester Memorial Hospital and that none of the witnesses had any opinion regarding the defendants' treatment of the plaintiff.

The elements of a cause of action for medical malpractice are well established. To prevail, a malpractice plaintiff must prove "the proper standard of care against which the defendant physician's conduct is measured; an unskilled or negligent failure to comply with the applicable standard; and a resulting injury proximately caused by the physician's want of skill or care. (*Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 256; *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 423.)" (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 241-42.) Because laypersons normally are not qualified to evaluate professional medical conduct, this court has stated that a plaintiff generally must present expert testimony to establish the elements of the cause of action; exceptions to the requirement of expert testimony have been found in cases in which the treatment is so common, or the act so grossly negligent, that a layman would be able to make a proper evaluation of the challenged conduct in the light of his own fund of experience and knowledge. (*Purtill*, 111 Ill. 2d at 242; *Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 256-57.) Also, this court has held that certain professional guides may serve the same purpose as expert testimony. See, *e.g., Ohligschlager v. Proctor Community Hospital* (1973), 55 Ill. 2d 411, 417-18 (manufacturer's instructions for use of drug); *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 330-32 (hospital licensing regulations, accreditation standards, and bylaws).

In reversing the summary judgment order, the appellate court stated that the evidence in the record supported the inferences that the defendant suffered the fractured vertebra as a result of his automobile accident on January 17, 1981, that the fracture was not diagnosed until the plaintiff entered the Veterans Administration hospital in Marion on January 20, and that the defendants were negligent because the fracture was, in

the appellate court's view, readily discovered on January 20. The appellate court did not say, however, that expert testimony could be dispensed with. The plaintiff argues that although it would be necessary for him to present expert testimony to establish the existence of the fracture at the time of his admission to the Veterans Administration hospital in Marion, an inference may be drawn from the evidence, without the aid of expert testimony, that the failure to make that diagnosis at Chester was the result of the defendants' negligence.

Nothing in the record before us suggests that the plaintiff would have been able to establish the elements of his cause of action—the applicable standard of care, the defendants' deviation from the standard, and the plaintiff's resulting injury—without expert testimony or some suitable substitute for it. In response to interrogatories, plaintiff's counsel indicated that several experts would testify about the plaintiff's condition upon his admission to the Veterans Administration hospitals in Marion and St. Louis. Moreover, the plaintiff acknowledges in this court that expert testimony would be necessary in describing his condition at the time of his admission to those hospitals. We fail to see why expert testimony would not also be necessary in establishing the existence of the fracture at an earlier time, and the defendants' negligence in failing to make that diagnosis.

Finally, the plaintiff contends that summary judgment was improper because there remained in the case a question of fact concerning the opinion of Dr. Knoke, identified as an intended trial witness in the affidavit submitted by plaintiff's counsel in opposition to the defendants' motions for summary judgment. The plaintiff notes that Dr. Knoke's views regarding the treatment of the plaintiff at Chester Memorial Hospital were not made known before the trial judge granted summary judgment, and the plaintiff contends that the uncertainty regarding Dr.

Knoke's testimony raised a factual issue sufficient to preclude summary judgment.

This argument must fail. A party may not resist a motion for summary judgment simply by identifying potential trial witnesses and then failing to determine what their opinions are or what their testimony might be; the plaintiff makes no claim that he did not have sufficient time in which to procure the necessary expert testimony. (*Cf. Stevenson v. Nauton* (1979), 71 Ill. App. 3d 831, 835-36 (after examining medical records, plaintiff's expert unable to formulate opinion of defendant's conduct).) It was the plaintiff's duty to present the opinions of his witnesses, and he cannot be heard to complain that the defendants failed to do that for him.

As a final matter, we note that the plaintiff argued in the trial court that there existed a dispute whether Dr. Whittenberg relied on the radiologist's interpretation of the Chester hospital X rays, as Dr. Whittenberg claimed, or whether he read the X rays himself. In opposing the defendants' motions for summary judgment, the plaintiff submitted affidavits of witnesses suggesting that Dr. Whittenberg said he had read the X rays himself. The plaintiff does not renew that argument here. The factual discrepancy did not prevent summary judgment, however, for expert testimony was necessary to support the plaintiff's cause of action under either version of events.

For the reasons stated, the judgment of the appellate court is reversed, and the judgment of the circuit court of Randolph County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE STAMOS took no part in the consideration or decision of this case.