MARIANNE POGGE, as Trustee, *et al.*, Plaintiffs-Appellants, v. MARSHALL HALE, Defendant (Passavant Hospital, Defendant-Appellee).

Fourth District    No. 4—93—0132

Argued August 19, 1993.—Opinion filed November 30, 1993.

COOK, J., specially concurring.

Wayne R. Golomb, of Springfield, for appellant.

Kathleen L. Pine and Gregory L. Barnes (argued), both of Sandberg, Phoenix & von Gontard, P.C., of St. Louis, Missouri, for appellee.

JUSTICE LUND delivered the opinion of the court:

Plaintiff Marianne Pogge, as trustee for Michael L. Smock and Cynthia J. Smock, appeals from an order entered by the circuit court of Morgan County granting the motion for summary judgment of defendant Passavant Hospital (Passavant). We affirm.

This is a medical malpractice action originally filed in 1985 against Marshall Hale, M.D., a board-certified family practitioner, for injuries to Cynthia Smock (Cynthia) and the death of her 38-week-old fetus, stemming from complications arising from Crohn's disease, a disorder marked by severe inflammation of the intestinal tract. Passavant was added as a defendant in 1987. The trial court entered summary judgment as to Dr. Hale in 1989. That order was appealed to this court, resulting in a reversal of the summary judgment in *Smock v. Hale* (1990), 197 Ill. App. 3d 732, 555 N.E.2d 74, *appeal denied* (1990), 133 Ill. 2d 573, 561 N.E.2d 708. The main issue in that case was the trial court's disqualification of plaintiff's medical expert, Richard Taylor, M.D., a board-certified general colon and rectal surgeon. That action left plaintiff with no expert, the trial court refused to revise its scheduling order for discovery under Supreme Court Rule 220 (134 Ill. 2d R. 220), and this led to summary judgment on grounds that plaintiff had no present ability to offer competent medical testimony to establish the applicable standard of care. We found the disqualification to be in error and further ordered the trial court to revise its scheduling order. *Smock*, 197 Ill. App. 3d at 740-41, 555 N.E.2d at 79.

In October 1989, while the Hale summary judgment order was on appeal, Passavant filed a motion for summary judgment. That motion was heard in December 1989 and, in May 1990, was allowed by the trial court in a memorandum opinion. On plaintiff's motion, the trial court delayed final judgment until November 1990, when Dr. Hale's petition for leave to appeal to the supreme court was denied. The final order granting summary judgment to Passavant was entered on November 13, 1990. Dr. Hale settled with plaintiff in January 1993. In February 1993, following dismissal of the case, plaintiff filed her notice of appeal, challenging the order granting summary judgment to Passavant.

Cynthia had a history of Crohn's disease. She became pregnant in 1984 and consulted Dr. Hale for her prenatal care. When 38

weeks pregnant, she became ill with vomiting, abdominal pain, and rectal bleeding. After consulting with Dr. Hale by telephone, she went to the emergency room at Passavant. Meanwhile, Dr. Hale called the emergency room and left instructions for Cynthia's care when she arrived. There was a dispute over how long it took Dr. Hale to arrive at Passavant, with plaintiff claiming it was more than one hour and Dr. Hale claiming it took him only a few minutes after he was notified of Cynthia's arrival. It was undisputed that Dr. Dennis Backstrom, M.D., Passavant's emergency-room physician, did not attend Cynthia. However, his deposition testimony indicated he was always within 50 feet of her and available if necessary. Cynthia was attended by a nurse at all times until Dr. Hale's arrival, and there was apparently no dispute that Dr. Hale's instructions were carried out by emergency room personnel. Cynthia went into shock following the failure of nonoperative treatment employed by Dr. Hale. The fetus died *in utero* and was surgically removed during an operation to repair a perforation in Cynthia's intestine.

Plaintiff's original complaint against Passavant was filed on May 27, 1987. That complaint was based upon the assumption that the emergency room was not staffed with a physician on the night in question. When it was learned during the course of discovery that an emergency room physician was on duty when Cynthia presented herself to the emergency room, Passavant filed a motion for summary judgment, which was allowed. However, the trial court allowed a fifth-amended complaint, which was filed on January 5, 1989. Certain portions of the complaint were stricken on motion by Passavant. After amendment by interlineation, the complaint alleged in count III that (1) upon Cynthia's admission to the emergency room, Passavant was informed of her medical history and knew (or should have known) of her condition as one requiring immediate medical treatment; (2) Passavant failed to make its emergency room physician available to Cynthia, as required by its policies or rules (emergency department policies and procedures Nos. 671–1 and 671–19); (3) Passavant failed to require that Dr. Backstrom provide medical care to Passavant's emergency room patients, as required by its rules and regulations; (4) Passavant failed to ensure that Dr. Backstrom complied with his agreement to provide medical care and treatment to patients presenting to Passavant's emergency room in need of emergency medical treatment; (5) Passavant failed to require that Dr. Backstrom comply with Passavant's policies (medical staff bylaws, article III, section 3(B)(3), and rules and regulations); (6) as a direct and proximate result of Passa-

vant's omissions, Cynthia's fetus died; and (7) as a result of the fetus' wrongful death, Cynthia and her husband were deprived of valuable services and the society of the fetus. Count IV made the same allegations and sought recovery for injuries to Cynthia and for her physical and emotional pain and suffering.

Pertinent portions of the policies, bylaws, and Dr. Backstrom's agreement are as follows:

Policy No. 671—1

*Emergency Department Guidelines*

"SPECIAL INSTRUCTIONS:

These guidelines were promulgated through good faith, and the Family Practice Department realizes there can be exceptions to these guidelines depending on conditions that exist at the time.

\*\*\*

2. Every patient coming to the Emergency Room for treatment will be evaluated by a physician.

\*\*\*

6. Seriously ill patients coming into the hospital as a direct admission without previous evaluation by a physician must be seen by the Emergency Room Physician."

Policy No. 671—19

*Emergency Patients*

"POLICY:

Patient presenting with a real or possible emergency complaint will be seen immediately by the Emergency Department physician for an initial evaluation prior to notifying the private physician or ordering lab and x-ray. No treatment will be rendered such patient without the permission of the private physician unless a delay would be detrimental to the patient's health.

\*\*\*

SPECIAL INSTRUCTIONS:

\*\*\*

2. If an emergency does exist, the Emergency Department physician will begin treatment immediately."

*Rules and Regulations of the Emergency Department*

"I. PURPOSE

The purpose of the Emergency Department is to provide acute primary care to all patients, emergency or otherwise, presenting to the Hospital. \*\*\*

* * *

## VII. PATIENTS

A. All patients will be screened immediately by the Department personnel to determine:

1. The severity of the presenting condition.

2. Whether or not they have a private physician.

B. The presence of a physician covering the Emergency Department shall in no way interfere with the private patient-physician relationship.

C. Private patients are those who are under the care of a private physician *when presenting at the department.* [Emphasis in original.]

D. Patients will be seen in the following order:

1. Dire emergencies—immediately—treated until the private physician or the physician on call can be present.

* * *

## VIII. RESPONSIBILITIES AND DUTIES OF EMERGENCY SERVICE PHYSICIAN

A. The primary responsibility of the physician on duty is the welfare of the patient.

B. The physician on duty shall be in charge of all patients in the Emergency Service Department at least until the private physician or on call physician assumes that responsibility."

*Bylaws of the Medical Staff of the Passavant Memorial Area Hospital Association*

"ARTICLE III: Membership
* * *

Section 3. Rights and Duties of Members
* * *

B. Each member of the medical staff shall have the following duties as pertain to his medical staff category:
* * *

3. To perform professionally according to his best ability and within the field of his competence."

*Agreement Between Passavant and Dr. Backstrom*

"3.2—1 *Standards of Medical Services.* The Specialist shall, within the framework of the aforementioned standards, rules, and regulations, render his professional services in a competent, efficient[,] and satisfactory manner according to the

standards of the medical practice determined by the Medical Staff of the Hospital.

\*\*\*

3.2—3 *Personal Duties.* The Specialist shall provide his personal professional medical services as follows: (1) All services performed in the Department that are necessary to prevent the death or serious impairment of the health of an individual; (2) services to all persons presenting themselves to the Department for the purpose of medical care until such time that, if applicable according to the Department policy, another member of the Medical Staff assumes responsibility for further professional medical services to that person; and (3) shall make himself available to perform his personal services to all persons who may present themselves to the Department."

The trial court entered four discovery schedule orders during the course of litigation regarding disclosure of expert witnesses and completion of depositions. This was prior to the appeal in *Smock.* After the trial court disqualified plaintiff's expert, Dr. Taylor, from testifying as to the standard of care, and before it entered summary judgment as to Dr. Hale, plaintiff had filed a motion to vacate the order disqualifying Dr. Taylor and to vacate the court's scheduling order so that she could designate a new expert. The trial court denied the motion to vacate the order disqualifying Dr. Taylor, but granted the motion to vacate the scheduling order. That order, entered on July 7, 1989, gave plaintiff additional time to designate a new expert. However, on July 10, 1989, the court, acting on its own motion, reconsidered its order vacating that order and denied the motion to vacate. The court's action in refusing to vacate its scheduling order was an issue decided in the *Smock* appeal.

Dr. Taylor gave a deposition prior to the filing of plaintiff's fifth-amended complaint against Passavant. In the deposition, Dr. Taylor stated he had no criticism of the emergency room personnel or Passavant. He did criticize Passavant for failing to have a physician on duty in the emergency room. He stated that assuming a doctor was available, should Cynthia have gone into cardiac arrest or had other complications arisen, he would have no criticism of Passavant. Dr. Taylor also stated this hypothetical emergency room physician would have no duty to treat Cynthia where her attending physician had given orders for her care, although there might be some duty if the orders were clearly inadequate.

Passavant's motion for summary judgment as to plaintiff's fifth-amended complaint was filed in October 1989 and alleged that (1) expert testimony was required to establish the standard of care by which Passavant's conduct must be measured, that Passavant deviated from the standard of care, and this deviation proximately caused the alleged injuries; (2) plaintiff's only expert, Dr. Taylor, never expressed an opinion that Passavant failed to comply with any policies, rules, bylaws, or contracts; (3) documents cited by plaintiff either do not require Passavant to act as plaintiff claims or, in fact, Passavant followed the guidelines; (4) even if Passavant's policies were breached, plaintiff presented no evidence through any other expert to show how these breaches could have caused Cynthia's injuries; and (5) without expert testimony that breach of the policies, rules, bylaws, and agreements proximately caused Cynthia's injuries, Passavant was entitled to summary judgment.

Plaintiff offered affidavits of Dr. Taylor and Kenneth Kessel, M.D. (a board-certified family practitioner), in opposition to Passavant's motion. Dr. Taylor's affidavit dated December 15, 1989, stated the following: (1) in his deposition of June 12, 1987, his criticism of Passavant for failure to have an emergency room physician available was not, and is not, meant to imply that a hospital need only have an emergency room physician present; (2) having an emergency room physician present who fails to render emergency care to a patient in need of emergency medical treatment is a violation of the standard of care owed an emergency patient; (3) Cynthia was a patient in need of emergency medical care; (4) the failure of Passavant to ensure its emergency room physician gave emergency medical care to Cynthia when she arrived was a deviation from the standard of care required of Passavant; (5) standard practice of emergency rooms throughout the United States requires that an on-duty emergency room physician examine the emergency patient on presentation to the emergency room to evaluate the medical condition of that patient; (6) had a reasonably competent emergency room physician examined Cynthia, her medical condition would have revealed that signs and symptoms she experienced on presentation would have indicated plaintiff was suffering from a "surgical abdomen"; (7) this medical condition should have initiated diagnostic and therapeutic techniques leading to both surgical and obstetrical monitoring and intervention, which techniques would be initiated by the emergency room physician; (8) said therapies and consults would have avoided the loss of Cynthia's unborn baby and the adverse

progression of her condition, which nearly caused her death less than 10 hours later; (9) the failure of Passavant's emergency room physician to examine Cynthia and provide medical care caused or contributed to a delay in the implementation of needed therapies; and (10) based upon a reasonable degree of medical certainty, the initiation of appropriate emergency room procedures by Passavant's medical personnel could have avoided the outcome on April 24, 1985.

Dr. Kessel's affidavit was undated and stated that he had reviewed Cynthia's medical records from 1984 and 1985 and concluded that (1) at the time of Cynthia's pregnancy she exhibited signs of Crohn's disease; (2) her pregnancy was a medically complicated, high-risk pregnancy; (3) family physicians are trained to care for medically uncomplicated obstetrical cases; (4) such physicians may handle some complicated obstetrical cases with the help of consultants; however, this decision is the physician's; (5) it is medically unwise and beneath the standard of care to hold off using appropriate consultants until a patient is in as severe difficulty as Cynthia was; (6) Cynthia's fetus was viable at the time of admission and she was in early hemorrhagic shock; (7) it appears that Cynthia and her unborn child were left unattended in the emergency room for a period of time when the patient was in critical condition and requiring immediate examination and action; (8) at the time of hospitalization, it is difficult to understand why obstetrical consultation was not sought immediately for Cynthia, whose exsanguination placed the fetus in jeopardy; (9) had a competent emergency room physician provided medical care to Cynthia, blood and fluid losses would have been replaced, fetal monitoring would have begun sooner, and gastroenterological and obstetrical consultations would have been initiated in a timely manner; (10) the time period without treatment of blood loss contributed to the intrauterine death of the fetus; (11) had the emergency room physician acted promptly, the fetus would probably have survived; (12) the minimum standard of care requires an emergency room physician to examine and provide care to seriously ill patients such as Cynthia who come to the emergency room for treatment; (13) the failure to use appropriate consultation in a timely manner in the prenatal course and at the time of the acute event contributed to the death of the fetus; and (14) Dr. Hale's failure to obtain medical consultation from a gastroenterologist during the prenatal course and to obtain obstetrical consultation at the time of hospitalization fell below the minimum expected standards of a family physician in management of Cynthia.

Passavant moved to strike the affidavits of Dr. Taylor and Dr. Kessel. Passavant noted Dr. Taylor's deposition testimony did not provide causation evidence that a breach of Passavant's policies caused injury to Cynthia, as the doctor had not expressed an opinion regarding these policies. Passavant's motion to strike also noted there was no affirmative showing in Dr. Taylor's affidavit that, if sworn as a witness, he could testify competently to the matters stated as required by Supreme Court Rule 191 (134 Ill. 2d R. 191). Passavant also complained that Dr. Taylor's deposition testimony so differed from his affidavit that the court should not consider either one as competent evidence from a qualified expert. Passavant also noted that Dr. Taylor did not state in his affidavit that Passavant's breach of any policy or rule cited by plaintiff caused or contributed to Cynthia's injuries.

As to Dr. Kessel's affidavit, Passavant alleged he had not been disclosed by plaintiff as an expert in accordance with Supreme Court Rule 220.

The trial court granted the motion for summary judgment. In its memorandum opinion, the court allowed the motion to strike Dr. Kessel's affidavit because he was not disclosed as an expert in accordance with Supreme Court Rule 220 and the court's order. The court also allowed the motion to strike Dr. Taylor's affidavit, noting that (1) the affidavit appeared to supplement and explain his prior deposition testimony; (2) it did not comply with Supreme Court Rule 191; (3) the affidavit amounted to redirect examination without re-cross-examination, since it expands and clarifies Dr. Taylor's deposition testimony; (4) Dr. Taylor does not allege in the affidavit any failure of Passavant to comply with its policies, rules, or regulations cited by plaintiff as the basis of her fifth-amended complaint; and (5) Dr. Taylor alleges a national standard of care for emergency room physicians, yet fails to attempt to explain how interrelated policies, rules, and regulations applied to that standard or to indicate a violation of the policies and rules was a proximate cause of Cynthia's injuries.

As to Passavant's motion for summary judgment, the court found there was no genuine issue of material fact as to policy No. 671—1. Cynthia was given emergency care on Dr. Hale's orders, Dr. Backstrom was on duty in the emergency room, and Cynthia was evaluated by Dr. Hale after presenting, if not before admission. The court also found this policy recognizes the highest possible medical care could be rendered without evaluation by an emergency room physician. Whether Dr. Hale's prenatal patient relationship with

Cynthia, his telephone conference with her and her hospital admission, with orders, was a previous evaluation under the policy (thus excusing evaluation by an emergency room physician) requires expert opinion. That expert must state the standard for a previous evaluation and indicate the facts in Cynthia's case do not constitute a previous evaluation before concluding there has been a breach of the policy. As to policy No. 671—19, the court concluded it did not apply where Cynthia was admitted with orders from her own physician. The court also reviewed emergency department rules and regulations and found they either did not apply to Cynthia's case or they had been followed. The court also found there was a need for expert opinion as to applicability of some of the rules.

The court also reviewed the agreement between Dr. Backstrom and Passavant. It found that provisions of this agreement were redundant and more general than the policies and regulations reviewed, and it would require expert opinion to explain the weight to be given specific language in the agreement vis-a-vis the policies and conditions to which they apply. The court also found that expert opinion would be needed to apply the bylaws cited by plaintiff. For instance, the court noted that article III, section 3(B)(3), requires that Dr. Backstrom perform to the best of his ability and within his field of competence. Whether these requirements mean he should have countermanded or supplemented Dr. Hale's orders and independently treated Cynthia or whether he, as an emergency room physician, should have countermanded or supplemented the orders of a board-certified family physician would require expert opinion. The court noted that without expert opinion, the trier of fact would be required to speculate upon application of esoteric policies, rules, and regulations to the facts.

■■ In a medical negligence action, a plaintiff must generally establish, by expert testimony, the standard of care against which defendant's conduct is to be measured. (See *Riley v. Koneru* (1992), 228 Ill. App. 3d 883, 886, 593 N.E.2d 788, 789; *Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 256, 381 N.E.2d 279, 282.) Exceptions exist only for those cases in which the negligence is so grossly apparent or the treatment so common that a layperson, armed with everyday ordinary knowledge, could readily appraise it. (*Taylor v. City of Beardstown* (1986), 142 Ill. App. 3d 584, 594, 491 N.E.2d 803, 810.) A hospital is under a duty to conform to the legal standard of reasonable conduct in light of the apparent risk. (*Ohligschlager v. Proctor Community Hospital* (1973), 55 Ill. 2d 411, 420, 303 N.E.2d 392, 397.)

"A plaintiff must prove that the hospital failed to comply with the standard of proper care which guides institutions holding themselves out as devoted to the care and saving of human life, and that this failure resulted in the injury complained of." *Johnson v. St. Bernard Hospital* (1979), 79 Ill. App. 3d 709, 716, 399 N.E.2d 198, 204.

█ Plaintiff first argues that expert opinion is not necessary to determine whether the above-cited policies, rules, regulations, bylaws, and Dr. Backstrom's agreement are applicable to this case. She points out that since the supreme court's decision in *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253, a plaintiff has been allowed to use regulations, standards, and bylaws as evidence of the standard of care. In that case, plaintiff broke his leg and was injured through negligence of the hospital when his leg swelled inside the cast, cutting off circulation in his leg. The leg ultimately had to be amputated. A jury found in plaintiff's favor and, on appeal to this court, the verdict was affirmed. (*Darling v. Charleston Community Memorial Hospital* (1964), 50 Ill. App. 2d 253, 200 N.E.2d 149.) On further appeal to the supreme court, the main issue involved the duty of the hospital to plaintiff. The question arose as to what effect to give hospital bylaws and regulations promulgated by the State Department of Public Health. The court noted that regulations, standards, and bylaws introduced by plaintiff into evidence performed much the same function as does evidence of custom, in that evidence aided the jury in deciding what was feasible and what defendant knew or should have known. However, the court also noted this evidence did not conclusively establish the standard of care and that it was not used in that fashion. (*Darling*, 33 Ill. 2d at 332, 211 N.E.2d at 257.) The *Darling* case is of doubtful applicability to the instant case, because plaintiff seeks to have the cited policies and bylaws conclusively establish the standard of care.

Plaintiff also attempts to show that Passavant's omissions were obvious breaches of cited policies and rules. In particular, she cites policy No. 671—19, but does not attempt to explain how this policy was breached in Cynthia's case. It is undisputed that Cynthia had a private physician. The physician not only knew she was going to the emergency room, but had left specific instructions for her care pending his arrival. Whether the delay in treatment was detrimental to Cynthia's health is a matter requiring expert opinion.

Plaintiff also cites the following rules and regulations of the emergency department: (1) paragraph No. VII(A) of policy No.

671—19, which states that all patients will be screened immediately by emergency department personnel to determine the severity of their condition and whether or not they have a private physician; subparagraph (D), which states that dire emergencies will be treated first until the private physician or the physician on call can be present; and (2) paragraph No. VIII(A), which states the primary responsibility of the physician on duty is the welfare of the patient, and No. VIII(B), which states the physician on duty shall be in charge of all patients in the emergency room at least until the private physician or on-call physician assumes that responsibility. Unfortunately, plaintiff does not discuss how these rules apply to Cynthia's case.

Plaintiff also cites section 3.2—3 of the agreement between Passavant and Dr. Backstrom. Provisions of this section are rather vague, and plaintiff does not discuss their applicability to Cynthia's case in her brief or how these provisions are to be read in conjunction with the other policies and rules on which she relies.

Plaintiff believes the issue is very straightforward. Her complaint with Passavant is that it breached its duty to Cynthia by not requiring Dr. Backstrom to see her on her presentation to the emergency room. She believes the jury can decide this without aid of expert testimony. She then states in her brief that the duty issue is really a question of whether Passavant breached its *administrative* duty to Cynthia; it is not a duty that involves medical issues. In support of this proposition, she cites *Edelin v. Westlake Community Hospital* (1987), 157 Ill. App. 3d 857, 510 N.E.2d 958. In that case, plaintiff sued the hospital for injuries suffered when she slipped and fell in the hospital lobby after being discharged. Hospital policy was to provide patients with escorts to their cars upon discharge. The trial court directed a verdict in favor of the hospital, because plaintiff had presented no expert testimony to establish the standard of care. The appellate court reversed on appeal, finding that while expert testimony is normally necessary to establish the standard of care, this was not a case of medical malpractice, but rather concerned the hospital's administrative duty to plaintiff as evidenced by its policy. Even if it were a medical negligence question, the court found the alleged negligence relates to matters of common knowledge which would not require expert opinion. *Edelin*, 157 Ill. App. 3d at 862-63, 510 N.E.2d at 961.

It is obvious the *Edelin* case does not support plaintiff's position that expert opinion was not necessary in the instant case. This is a complicated case of medical negligence, whereas *Edelin* in-

volved the question of whether the hospital had a duty to follow a very simple policy of escorting patients from the hospital. As Passavant points out, we stated in the previous appeal in *Smock* that the malpractice alleged by plaintiff is not the type which laypersons could evaluate without the aid of expert testimony. *Smock,* 197 Ill. App. 3d at 738, 555 N.E.2d at 78.

Plaintiff also relies on *Andrews v. Northwestern Memorial Hospital* (1989), 184 Ill. App. 3d 486, 540 N.E.2d 447. In that case, a patient sued the hospital and a doctor for negligence involving two surgeries. He alleged the surgeries were unnecessary, were negligently performed, and that the hospital failed to require treatment by competent medical experts and to supervise the competence of physicians in the neurosurgical department of the hospital. In his deposition, plaintiff's expert said he found no deviation from the standard of care on the part of the hospital. On this basis, the hospital moved for summary judgment. The patient relied on the affidavit of an expert in hospital administration who had reviewed established standards for hospitals in the Chicago area, the hospital bylaws, and other documents. From this, he determined the hospital's bylaws deviated from the standards in certain respects. The trial court granted summary judgment but the appellate court reversed, finding the affidavit adequately established the standard of care in demonstrating how the hospital failed to supervise the doctor and failed to require a consultation. (*Andrews,* 184 Ill. App. 3d at 494, 540 N.E.2d at 453.) This case does not support plaintiff's position, because the plaintiff in *Andrews* presented expert testimony on the standard of care. Here, plaintiff seeks to do away completely with this requirement.

We conclude the trial court did not err in granting summary judgment, because plaintiff did not present expert opinion to establish a violation of Passavant's policies and that this breach constituted a breach of the standard of care. There is nothing in the pleadings, affidavits, or other evidence establishing that Passavant's rules, regulations, and bylaws, or Dr. Backstrom's agreement constitute the prevailing standard of care in the medical community.

The affidavits of Dr. Taylor and Dr. Kessel give no guidance as to how the policies are to be applied in Cynthia's case. Without such expert guidance, it would be virtually impossible for a jury to determine whether these policies were breached. For instance, the policies relied upon by plaintiff do not, by their own terms, apply to every emergency room patient. There are different rules for patients who have private physicians (policy No. 671—19) and for pa-

tients who have been previously evaluated by a private physician (policy No. 671—1). Paragraphs VII(B) and (C) of emergency department rules state that the presence of an emergency room physician shall not interfere with the private patient-physician relationship, a private patient being defined as one who is under the care of a private physician when presenting at the emergency room. Cynthia was unquestionably a patient who had a private physician at the time she arrived at Passavant's emergency room. What were Dr. Backstrom's duties toward her under these circumstances? Only an expert could answer this question.

Policy No. 671—1 may or may not apply to this case, depending upon whether Cynthia's telephone consultation with Dr. Hale constituted an evaluation under that rule. Again, only an expert could answer that question.

Questions exist as to the applicability of policy No. 671—19 to Cynthia's case. She had already notified her private physician and, depending upon what an expert might say, he may have evaluated her by telephone. In addition, it appears undisputed that treatment was rendered to Cynthia in the emergency room in accordance with Dr. Hale's instructions.

The difficulties of applying the various policies, rules, and bylaws to Cynthia's case are readily apparent from the above examples. Expert opinion is essential under such circumstances.

■ Plaintiff next argues the trial court erred in striking the affidavits of Dr. Taylor and Dr. Kessel. However, plaintiff's argument in her brief does not address any of the reasons given by the trial court for striking the affidavits. She simply states that both affidavits were sufficient to create a factual question and the court should not have granted summary judgment.

The trial court erred in striking Dr. Taylor's affidavit on grounds that it explained and supplemented his prior deposition testimony and amounted to redirect examination without re-cross-examination. The parties did not discuss this in their briefs or cite any authority in support or opposition to this ruling. However, it appears the ruling was based upon a committee comment to Supreme Court Rule 220(d), which provides:

> "The purpose of the rule is to permit litigants to ascertain and rely upon the opinions of experts retained by their adversaries. Consequently, paragraph (d) limits the permissible scope of an expert's testimony to those opinions expressed in response to discovery. However, an expert will be permitted to testify as to matters other than those previously disclosed

in instances where no inquiry is made during discovery. It should be emphasized that this latter qualification will have only limited application in light of the requirement that a party continuously supplement discovery concerning the opinions of such witnesses." (134 Ill. 2d R. 220(d), Committee Comments, at 182.)

Rule 220(d) does not apply to affidavits, but only to trial testimony. Supreme Court Rule 191 applies to affidavits. An affiant may testify to anything, as long as he or she is competent to do so. However, we note that even if Rule 220 were applicable here, the last sentence of subparagraph (d) would permit Dr. Taylor to give the opinions he did, as his prior deposition testimony was given at a time when it was assumed that no emergency room physician was present and no inquiry was made about his duties to Cynthia.

The trial court struck Dr. Kessel's affidavit on the basis that he was a purported expert not disclosed under Rule 220 and the court's scheduling order. This was erroneous. In *Brooks v. Illinois Masonic Hospital & Medical Center* (1992), 240 Ill. App. 3d 521, 608 N.E.2d 483, *appeal denied* (1993), 149 Ill. 2d 648, 612 N.E.2d 511, plaintiff sought to oppose a summary judgment motion with the affidavit of an expert who had not been disclosed under Rule 220. The trial court granted summary judgment, disregarding the affidavit on this ground. The appellate court found the affidavit complied with Rule 191, in that this rule requires a showing only that the witness *could* testify to the matters contained in the affidavit, not that he or she *will* testify. (*Brooks*, 240 Ill. App. 3d at 525, 608 N.E.2d at 486.) We hold that Rule 191 affiants are not required to be disclosed as expert trial witnesses under Rule 220.

However, any errors made by the trial court in striking the affidavits of Dr. Taylor and Dr. Kessel were harmless, because neither affidavit was sufficient to overcome Passavant's motion for summary judgment.

The court set forth specifically how Dr. Taylor's affidavit was insufficient. We agree with those conclusions. Although the court did not consider the substance of Dr. Kessel's affidavit, it also must fail. Although Dr. Kessel stated that the minimum standard of care requires an emergency room physician to examine and provide care to seriously ill patients such as Cynthia who come to the emergency room for treatment, he does not even mention any of the policies and rules relied upon by plaintiff in her fifth-amended complaint or explain how those policies and rules applied to Cynthia's case.

■ Plaintiff's last argument is that the trial court erred in refusing to vacate its Rule 220 scheduling order to allow her to designate an additional expert to establish the standard of care for Passavant. We have searched the record and have located no documents or docket entries indicating that plaintiff asked the court to vacate its scheduling order in connection with her cause of action against Passavant. The court did refuse to vacate its fourth scheduling order in July 1989 to allow plaintiff to secure an expert to replace Dr. Taylor, who had been stricken by the court as an expert to testify against Dr. Hale. That refusal was an issue in the *Smock* appeal, in which we ordered the trial court to revise its discovery schedule on remand. The record does not indicate whether this was done. However, plaintiff points to no other refusal as it concerns plaintiff's need for an expert to establish Passavant's standard of care, the breach of that standard, and proximate cause as to Cynthia's injuries. Thus, plaintiff's argument on this issue has no merit.

For the reasons stated, the trial court's order of summary judgment is affirmed.

Affirmed.

STEIGMANN, P.J., concurs.

JUSTICE COOK, specially concurring:

I concur with the majority opinion, except that in my view the trial court properly barred Dr. Kessel's testimony for plaintiff's failure to comply with Rule 220 and refused to consider that testimony on the motion for summary judgment.

Even before Rule 220 was adopted in 1984, a plaintiff who had been given sufficient time but had no expert could not prevent summary judgment by his unsupported assertion he might find an expert before trial. (*Stevenson v. Nauton* (1979), 71 Ill. App. 3d 831, 835-36, 390 N.E.2d 53, 57; see *Buck v. Alton Memorial Hospital* (1980), 86 Ill. App. 3d 347, 355, 407 N.E.2d 1067, 1073.) In *Addison v. Whittenberg* (1988), 124 Ill. 2d 287, 294-99, 529 N.E.2d 552, 555-57, the supreme court considered an argument that Rule 220 added something to those cases, that summary judgment was proper where Rule 220(d) would bar plaintiff from introducing any expert testimony not already disclosed. The supreme court followed *Stevenson,* and granted summary judgment, but decided it was not necessary to consider the Rule 220 argument. The supreme court held that what was important was whether plaintiff had expert tes-

timony available at the required time, the time the motion for summary judgment was heard, not whether Rule 220 would prevent plaintiff from obtaining an expert in the future. The *Addison* plaintiff had not attempted to present any evidence barred by Rule 220.

An issue the supreme court did not reach in *Addison*, whether the barring of testimony under Rule 220 should result in summary judgment, is presented in this case. Here the trial court entered various orders under Rule 220 requiring disclosure and discovery of expert witnesses. Plaintiff failed to comply with those orders, as respects Dr. Kessel, and the trial court accordingly struck Dr. Kessel's affidavit. The record is unclear as to the sequence of discovery, but plaintiff does not dispute the trial court's ruling that plaintiff failed to comply with Rule 220 as to Dr. Kessel. Plaintiff argues only, citing *Brooks*, that a failure to comply with Rule 220 is irrelevant on a summary judgment motion. If that is the holding of *Brooks*, I would not follow *Brooks*.

In *Brooks*, plaintiffs filed the affidavit of a Dr. Mervis in response to defendant's motion for summary judgment. Discovery continued while the motion was pending, and eventually in answer to Rule 220 interrogatories plaintiffs indicated that no expert witness had been retained. Dr. Mervis was listed merely as a consultant, which prevented him from being called as a witness at trial or from being deposed by defendant. (134 Ill. 2d Rules 220(a)(2), (b)(2).) (It is not clear how a consulting witness can be shielded from discovery on one hand but allowed to file an affidavit on the other.) After a number of continuances, the trial court finally gave plaintiffs 90 days to find an expert who would testify at trial. When that had not been done over a year later the trial court granted the motion for summary judgment. The trial court did not bar Dr. Mervis' affidavit, but ruled it was vague and conclusory. The appellate court reversed, finding the affidavit sufficient. The court further held that the Rule 191 requirement that a summary judgment affiant be someone who if sworn as a witness could testify competently had been met.

> "Although Dr. Mervis was not a Rule 220 expert and was not to be called as a trial witness, a literal reading of Rule 191 requires that the affiant *could* testify competently, not that affiant will testify. If the supreme court had intended that Rule 191 affiants be disclosed as expert trial witnesses, it could have specifically provided for such." (Emphasis in original.) (*Brooks*, 240 Ill. App. 3d at 524-25, 608 N.E.2d at 486.)

Finally the court noted that Dr. Mervis had not been barred from testifying and could have been added to supplemental answers to Rule 220 interrogatories since the case had not been set for trial and was not within 90 days of the trial date.

Taking the last point first, *Brooks* is contrary to *Addison* and *Stevenson*. "[W]e do not believe that the possibility of further disclosures of expert opinion, even though done in compliance with the Rule [(Rule 220)], will enable a party to avoid a summary judgment to which the movant is otherwise entitled at the time the motion is heard." (*Addison*, 124 Ill. 2d at 296, 529 N.E.2d at 556.) The plaintiff in *Brooks* was required, at the time of the hearing on the motion for summary judgment, to have an expert who could testify at trial, and he did not.

*Brooks* appears to say that a witness who is not *barred* from testifying under Rule 220 can be a summary judgment affiant, and Dr. Mervis had not been barred from testifying under Rule 220. It would be wrong to say that only experts *disclosed* under Rule 220 can sign summary judgment affidavits. Some expert witnesses, such as treating physicians, need not be disclosed under Rule 220. (See *Addison*, 124 Ill. 2d at 295, 529 N.E.2d at 556.) Even where a witness has been barred from testifying as a Rule 220 sanction, changed circumstances may require the trial court to withdraw that sanction and reopen discovery. (*Cometo v. Foster McGaw Hospital* (1988), 167 Ill. App. 3d 1023, 1029, 522 N.E.2d 117, 121.) However, where a witness who must be disclosed under Rule 220 has not been so disclosed, and the trial court has barred that witness from testifying, and the trial court's sanction is an appropriate one, the affidavit of the witness should not be allowed to get the party past a motion for summary judgment.

The trial court properly refused to consider Dr. Kessel's testimony when it ruled on the motion for summary judgment.