DONALD HOUBOLT, Plaintiff-Appellant, v. THE COUNTY OF COOK, Defendant-Appellee.

First District (1st Division)   No. 1—92—2666

Opinion filed September 26, 1994.

Levin & Perconti, of Chicago (John J. Perconti, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Karen A. Covy and John P. Carreon, Assistant State's Attorneys, of counsel), for appellee.

JUSTICE MANNING delivered the opinion of the court:

Plaintiff, Donald Houbolt, appeals from entry of summary judgment in favor of defendant County of Cook (the County) finding as a matter of law that the County had no jurisdiction over 51st Street. The issues on appeal are: (1) whether the County presented sufficient evidence to establish annexation of the north half of the intersection of 51st Street and Mulligan by the City of Chicago; and (2) whether the trial court committed error when it granted summary judgment to the County.

On or about June 22, 1985, plaintiff was injured while riding his motorcycle westbound in the right-hand lane on 51st Street at the intersection of 51st and Mulligan Avenue. Plaintiff sued the County, alleging negligence in one or more of the following acts and/or omissions: (1) failure to have 51st Street at the intersection of Mulligan Avenue properly illuminated; (2) failure to repair potholes in the right-hand moving lane of travel on said roadway; (3) failure to

remove loose gravel from said roadway at said location; (4) improper construction and design of said roadway, in that standing water was allowed to form, thereby deteriorating the condition of said roadway; (5) failure to warn the motoring public of the dangerous condition of said roadway by not placing appropriate warning signs; and (6) failure to barricade said potholes and loose gravel.

Plaintiff alleged that the County had a duty to design, construct and maintain the roadway at the location of the injury with due care and defendant knew or should have known that the roadway, as designed, constructed and maintained by the County, was not reasonably fit or safe for travel. Plaintiff further alleged that the condition of the roadway was a direct and proximate cause of the fall and plaintiff's injury. Plaintiff alleged that he suffered divers injuries, both internally and externally, of a permanent and lasting nature which have caused and will continue to cause pain in his body and mind. Plaintiff seeks a sum in excess of $15,000 to cover the medical expenses and lost wages as a result of his injuries.

The County filed a motion for summary judgment, alleging that 51st Street at or near Mulligan Avenue was not controlled or maintained by it on or about June 22, 1985, and is not part of the Cook County highway system, nor is Mulligan Avenue. The County contends that because 51st Street was not part of the Cook County highway system and the County did not enter into any contracts to maintain it, there exists no genuine issue of material fact concerning the County's ownership, maintenance and control of 51st Street at or near its intersection with Mulligan Avenue. Therefore, it asserts the County is entitled to summary judgment as a matter of law. In support thereof, the County provided a Stickney Township map and the affidavit of Glenn W. Frederichs, superintendent of the Cook County Highway Department. The affidavit of Frederichs states: (1) that the map was approved on April 1, 1982, by H.W. Monroney, director of highways for the Illinois Department of Transportation; (2) the County of Cook did not enter into any contracts for the maintenance of 51st Street at or near the intersection with Mulligan Avenue; (3) 51st Street within the geographic limits of the County of Cook, at the location described in plaintiff's complaint, is not part of the Cook County highway system; (4) that the location is not controlled or maintained by the County of Cook; and (5) that it was not controlled or maintained by the County of Cook on June 22, 1985.

In further support of its motion for summary judgment, the County submitted the affidavit of Ronald I. Levine, highway systems manager for the Illinois Department of Transportation. He states in his affidavit that, according to his personal knowledge and a review

of records, the intersection of 51st Street and Mulligan Avenue is not, nor has it ever been, part of the highway system of the State of Illinois or the County of Cook highway system. The trial court granted the amended motion, finding that no genuine issue of material fact exists as a matter of law. Plaintiff appeals. For the reasons which follow, we reverse and remand.

■ The first issue is whether the County presented sufficient evidence to establish annexation by the City of Chicago of the north half of the intersection of 51st Street and Mulligan. It is fundamental that a municipality has no power to extend its boundaries unless it is done in the manner authorized by the legislature. (*City of East St. Louis v. Touchette* (1958), 14 Ill. 2d 243, 249, 150 N.E.2d 178.) As a matter of law, in a *quo warranto* action to test the validity of annexation by a municipality, the burden of proving validity of the purported annexation rests upon the defending municipality, which has the burden of proving its title, or additional facts upon which it relies, to bar prosecution of the suit. (*People ex rel. Village of Northbrook v. City of Highland Park* (1976), 35 Ill. App. 3d 435, 342 N.E.2d 196.) In the instant case, the County has the burden of proving the validity of annexation by the City of Chicago.

■ In *Touchette*, the court outlined the process for annexation, as follows:

"Annexation proceedings can be initiated either by written petition signed by owners of the land and by electors residing in the territory to be annexed, or by municipal ordinance expressing a desire to annex certain territory, being filed with the county clerk. Thereupon, the circuit court is required to enter an order fixing a time for hearing and giving certain notice of said hearing by publication. At the hearing the court hears any objections to the annexation and determines the validity of the proceeding, and if satisfied that the statute has been fully complied with the court is required to enter an order directing the question of annexation to be submitted to the corporate authorities of the annexing municipality or to the electors of the unincorporated territory, as the case may be, for final action." *Touchette*, 14 Ill. 2d at 250.

■ The County contends that the legislature enacted section 7—1—1 of the Illinois Municipal Code (65 ILCS Ann. 5/7—1—1 (Michie 1993)) to eliminate split jurisdiction in highways, unless there exists an agreement between municipalities to the contrary. Section 7—1—1 of the Municipal Code (65 ILCS Ann. 5/7—1—1 (Michie 1993)) states:

"The new boundary shall extend to the far side of any adjacent highway and shall include all of every highway within the area annexed. These highways shall be considered to be annexed even

though not included in the legal description set forth in the petition for annexation. When any land proposed to be annexed includes any highway under the jurisdiction of any township, the Township Commissioner of Highways and the Board of Town Trustees shall be notified in writing by certified or registered mail before any court hearing or other action is taken for annexation. In the event that a municipality fails to notify the Township Commissioner of Highways and the Board of Town Trustees of the annexation of an area within the township, the municipality shall reimburse that township for any loss or liability caused by the failure to give such notice. If any municipality has annexed any area before October 1, 1975 and the legal description in the petition for annexation did not include the entire adjacent highway, any such annexation shall be valid and any highway adjacent to the area annexed shall be considered to be annexed notwithstanding the failure of the petition to annex to include the description of the entire adjacent highway.

Any annexation, disconnection and annexation, or disconnection under this Article of any territory must be reported by certified or registered mail by the corporate authority initiating such action to the election authorities having jurisdiction in the territory and the post office branches serving the territory within 30 days of such annexation, disconnection and annexation, or disconnection."

The County further contends that the statute prevents a municipality from declining to maintain one-half of the roadway under the guise that it does not have jurisdiction over the other half of the roadway. According to the County, pursuant to section 7—1—1, the City of Chicago would also have jurisdiction over the north half of 51st Street.

The County's argument is not convincing. Prior to 1967, the annexation statute (Ill. Rev. Stat. 1965, ch. 24, par. 7—1—1) did not include a provision that adjacent roads be included in a petition for annexation. (*People ex rel. City of Des Plaines v. Village of Mount Prospect* (1975), 29 Ill. App. 3d 807, 814, 331 N.E.2d 373.) Since then, section 7—1—1 has been revised to automatically extend an annexing municipality's boundaries to the far side of adjoining highways by operation of law. (*City of Des Plaines*, 29 Ill. App. 3d at 809; 65 ILCS Ann. 5/7—1—1 (Michie 1993).) However, we cannot conclude that because the city maintained the north half of 51st Street, 51st Street was annexed by the city pursuant to section 7—1—1. Also, we cannot conclude that the County of Cook, Stickney Township or another municipality annexed the entirety of 51st Street, voluntarily or involuntarily, since the trial court failed to make a determination of whether there was annexation.

In *City of Des Plaines*, the facts were uncontested that the City of Des Plaines passed and approved an ordinance by which it purported to annex unincorporated territory located at the southwest corner of the intersection of Dempster Street and Elmhurst Road, in Cook County, Illinois, pursuant to the voluntary written petition of the record owners of the land. The ordinance was recorded, as prescribed by statute. Mt. Prospect passed and approved an ordinance by which it purported to annex parts of the same territory which had been included in the Des Plaines ordinance. Mt. Prospect challenged the validity of the Des Plaines annexation for failure to annex both sides of the adjacent highways. It was uncontroverted that Des Plaines' ordinance did not include both sides of the adjacent highways, that the highways were unincorporated area at a time of the Des Plaines annexation, and that the new boundary did not extend to the far side of the adjacent highways. The court held that Des Plaines failed to prove that its annexation of the territory was proper and that the trial court properly held the annexation null and void as having been successfully challenged in a *quo warranto* proceeding within one year.

Unlike *City of Des Plaines*, the facts are controverted as to whether there was an annexation and who actually exercised its governmental powers in and over the territory. Frederichs referenced the annexation provision but stated he does not know when the law was effective. Frederichs stated that the City of Chicago is the municipality that owns and controls 51st Street at Mulligan. Frederichs said his basis for stating that the City of Chicago is responsible for maintenance of 51st Street at Mulligan is the annexation provision. However, the County failed to present proof of annexation of 51st St. by the city. There is no evidence that a petition for annexation was filed or that an ordinance was passed or recorded or that notice was given. (65 ILCS Ann. 5/7—1—1 (Michie 1993).) No proof was presented as to what municipality exercised control of 51st Street through long continued use and public acquiescence to give rise to a finding of *de facto* annexation by the City of Chicago. *People ex rel. Village of Long Grove v. Village of Buffalo Grove* (1987), 160 Ill. App. 3d 455, 459, 513 N.E.2d 408.

Frederichs' affidavit and deposition testimony were contrary to Robert F. Callbeck's deposition testimony. Callbeck denied that the City of Chicago maintained the north half of the street. Thus, the question of who actually exercised its governmental powers in and over the territory is at issue. Callbeck, a civil engineer and facilities manager for the City of Chicago Department of Streets and Sanitation, stated in his deposition testimony that the entire intersection of

51st and Mulligan lies outside of the City of Chicago. Callbeck testified at his deposition as follows:

"Q. Does the entire intersection of 51st and Mulligan lie within the City of Chicago?

A. No, sir.

Q. What portion lies within the City of Chicago and what portion lies outside the City of Chicago?

A. The center line of the dedicated public way for 51st Street is the city limits.

Q. So that would mean everything to the south would be within the city.

A. Correct.

Q. And everything to the north of the center line would be what?

A. Is unincorporated.

Q. Would that be unincorporated Cook County?

A. Yes, sir."

Additionally, Callbeck testified as follows about the condition and maintenance of the roadway:

"Q. Now, in your experience, in your engineering experience and all your experience in working for the City of Chicago in the various capacities that you have, Mr. Callbeck, are you aware with respect to the county lines of the City of Chicago say adjacent to another municipality whereby the City of Chicago would only maintain half of the roadway?

A. Yes, sir. Most of the city limits are down the center of some street throughout the City of Chicago.

Q. Can you give me an example?

A. Howard, Austin, Roosevelt Road.

Q. And say with respect to Howard, are you saying that there is a municipality then on one half and the City of Chicago on the other half?

A. The City of Chicago has the south half of the street. Evanston has the north half of the street.

Q. In that particular instance, who would maintain the north half?

A. Evanston.

Q. And who would maintain the south half?

A. The City of Chicago. When we did an improvement of Howard sometime in the '70's, we had to execute an agreement with Evanston to be able to do the full street. The State paid for it but we had an executed agreement with Evanston to be able to go out and improve the full street.

Q. And then thereafter as to maintenance it would fall within each municipality, correct?

A. Correct."

On cross-examination, Callbeck testified as follows:

"Q. Do you know who maintains the north half of 51st Street?

A. No, sir. I assume it's Cook County.

Q. What is that assumption based on?

A. It's based on our street classification guide here that says that we have the south half only, and when I dug out what I could for the various surrounding municipalities it's unimproved—not unimproved, undedicated.

Q. So you have no personal firsthand knowledge that it is the County's responsibility to maintain 51st Street to the north half?

A. No, sir.

***

Yeah, as I say, because I know we have the south half. The north half is unincorporated and I do know that Cook County is responsible for maintaining roadways in the unincorporated areas of Cook County.

Q. Aren't there townships who maintain roads in unincorporated areas of Cook County?

A. That I don't know.

Q. Do you know what township this area of 51st and Mulligan to the north half falls into?

A. No, sir.

Q. You have not been out of the site on 51st and Mulligan since the early '80's at the latest date?

A. Correct.

Q. So you were not there during 1985?

A. No, sir.

Q. How does the city know what roads are under its jurisdiction?

A. These documents were developed over a period of time. I started in '67. We had them. I don't know who compiled them."

Callbeck also contradicted the affidavit of Ron Levine as to who has jurisdiction over the north half of 51st Street, as follows:

"Q. Are you familiar with Ron Levine of the Illinois Department of Transportation?

A. No, sir.

Q. I know you are not familiar with Mr. Levine but he is an official with the Illinois Department of Transportation. Would you say he is incorrect if he stated that the area to the north half of 51st Street is not under the jurisdiction of the County of Cook?

A. Contrary to what I believe, yes.

Q. So you would say he is wrong?

A. Correct.

Q. And what is that based on?

A. The fact that I have 80 acre sheets showing the center line of the street. Anything north of the center line is outside the City of Chicago. We have no jurisdiction or responsibility.

Q. But you don't know that—

A. I don't know who does. I believe it is Cook County because it's unincorporated."

Callbeck further testified that there is no agreement between the County of Cook and the City of Chicago. He testified as follows:

"Q. Is there an agreement between the County and the City?

A. No, sir.

Q. How do you know that?

A. Because I execute all agreements for roadway maintenance.

Q. How do you know there was not an agreement prior to 1967?

A. I don't know if there is any agreement prior to '67.

Q. You do not know if there is any agreement?

A. I don't know if there is one prior to '67. I know we tried to make an improvement and try [sic] to get the County to maintain it, they say oh, no, that's not our responsibility."

In *Long Grove* (160 Ill. App. 3d at 458), the plaintiff sought to prove that on March 13, 1973, it had adopted an ordinance annexing the sewer site which it owned; however, it could neither account for nor produce the original ordinance. The trial court refused to admit into evidence purported copies tendered by plaintiff. In *Long Grove*, the validity of the 1973 annexation by Long Grove turned on the undisputed fact that the ordinance was never recorded. The appellate court upheld the trial court's decision to invalidate the 1973 ordinance. In the instant case, the evidence presented was less substantial than the evidence presented in *Long Grove*. In this case, the evidence presented was the opinion of Frederichs that annexation occurred, which was contradicted by Frederichs himself, as well as Callbeck.

■ The County of Cook has failed to present evidence to show the validity of annexation. No evidence of a valid annexation was presented and there was contradictory testimony by Callbeck and Frederichs about who has jurisdiction over 51st Street at Mulligan. Thus, as a matter of law, the County has not sustained its burden of proving the validity of annexation by the City of Chicago.

■ The second issue on appeal is whether the trial court committed error when it granted the County's motion for summary judgment. While the use of summary judgment is to be encouraged as an aid in the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt. (*Leoris & Co-*

*hen, P.C. v. McNiece* (1992), 226 Ill. App. 3d 591, 589 N.E.2d 1060.) A motion for summary judgment should be granted when the pleadings, depositions, admissions and affidavits on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. (735 ILSC Ann. 5/2—1005 (Michie 1993).) In determining whether a triable issue of fact exists, the pleadings, depositions, admissions and affidavits must be construed against the movant and in favor of the opponent. *Addison v. Whittenberg* (1988), 124 Ill. 2d 287, 529 N.E.2d 552.

The County contends that no genuine issue of material fact exists as a matter of law. It also contends that the City of Chicago had jurisdiction over and maintenance responsibility for, all of 51st Street at Mulligan, pursuant to section 7—1—1 of the Municipal Code (65 ILSC Ann. 5/7—1—1 (Michie 1993)).

■ Plaintiff contends that the County's motion for summary judgment should not have been granted because the conflicting testimony of Robert F. Callbeck and Glenn W. Frederichs clearly created a question of fact sufficient to defeat the motion for summary judgment. As previously stated, Callbeck testified that the entire intersection of 51st Street and Mulligan does not lie within the City of Chicago and everything to the north of the center line would be unincorporated Cook County. On the other hand, Frederichs testified at his deposition that: (1) in his opinion 51st Street at Mulligan is controlled by the City of Chicago based on a process of elimination, "Because it wasn't a state highway, it wasn't a county highway, it wasn't a township highway and the only one left is municipality"; (2) as of June of 1985, he does not know who owned 51st Street at Mulligan; (3) he does not know who designed and constructed 51st Street at Mulligan; and (4) based upon his personal knowledge 51st Street was not part of the Cook County highway system, as of June 22, 1985.

The County did not sustain its burden of proving that a valid annexation of 51st Street at Mulligan existed and that the City of Chicago had jurisdiction over that intersection. It merely alleges that annexation of 51st Street at Mulligan occurred. It did not show that a petition was filed or that any provision of the statute was complied with for a valid annexation. Defendant presented vague and conflicting testimony about the City of Chicago having jurisdiction over 51st Street at Mulligan Avenue. Based upon a review of the record and the contradictory testimony therein, a genuine issue of material fact exists as to who controls, maintains, built and has jurisdiction over 51st Street at Mulligan; thus, summary judgment is inappropriate.

Accordingly, for the foregoing reasons, the decision of the trial court to grant defendant's motion for summary judgment as a matter of law is reversed and remanded.

Reversed and remanded.

CAMPBELL, P.J., and BUCKLEY, J., concur.