VIOLA SMITH, as Special Adm'r of the Estate of William Smith, Deceased, Plaintiff-Appellee, v. PAUL MENET *et al.*, Defendants-Appellants.

Second District   No. 2—88—0029

Opinion filed October 21, 1988.

NASH, J., dissenting.

John W. Duncker, of O'Reilly, Cunningham, Duncan & Norton, of Wheaton (William F. Cunningham, of counsel), for appellants.

Carl F. Schroeder, of Carl F. Schroeder, Ltd., of Wheaton, and David A. Novoselsky & Associates, of Chicago (David A. Novoselsky, of counsel), for appellee.

JUSTICE INGLIS delivered the opinion of the court:

This is a medical malpractice action brought by plaintiff, William Smith, against defendants, Paul Menet and Glen Ellyn Clinic. A jury returned a verdict in favor of plaintiff and assessed damages at $630,000, which amount was reduced by 33% for comparative negligence to $422,100. Defendants timely appealed. We reverse.

It appears from the record that plaintiff died on March 25, 1988. Plaintiff's spouse, Viola Smith, was thereafter appointed by this court as special administrator and substituted for plaintiff. (Order of April 5, 1988.)

Plaintiff, William Smith, began treatment with defendant, Dr. Paul Menet, on March 8, 1984. Plaintiff had been diagnosed for diabetes in 1973. In March 1984, he went to the Glen Ellyn Clinic feeling he needed a physical exam and help with his diabetes, which had gotten out of control. The primary issue in this case is whether Dr. Menet was negligent in failing to diagnose and inform plaintiff that he had cancer. Further facts will be developed where relevant to our disposition in the case.

■ We initially note that plaintiff has asked that the statement of facts in defendants' brief be stricken as argumentative. We decline to do so. In the instant case, the statement of facts is not so flagrantly argumentative as to hinder or preclude review. Consequently, we do not strike the statement of facts in defendants' brief. See *James v. Yasunaga* (1987), 157 Ill. App. 3d 450, 452.

Defendants contend that the evidence failed to sustain plaintiff's burden of proof. Defendants argue that in order to succeed on his complaint, plaintiff had to prove that Dr. Menet's treatment of plaintiff fell below acceptable medical standards. Defendants argue that plaintiff's expert witness only testified that Dr. Menet's treatment of plaintiff fell below good medical care. Defendants further argue that good medical care is a higher standard than acceptable medical care.

■ In response, plaintiff claims that this issue has been waived due to the fact that defendants did not properly object to Dr. Golomb's testimony. Plaintiff further contends that he met his burden of proof. Although plaintiff contends that defendants' argument has

been waived for failure to object, the record indicates that defendants did object to the question based on the foundation, the form, and the wording as being inconsistent with the instructions on standard of care. We find these objections were sufficiently specific to preserve defendants' argument.

■ A plaintiff must establish the standard of care against which the defendant's conduct is measured and further prove that, judged in the light of this standard, the defendant was unskillful or negligent and that his want of skill or care caused the injury to the plaintiff. *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 423; see also *Northern Trust Co. v. Skokie Valley Community Hospital* (1980), 81 Ill. App. 3d 1110, 1126-27.

■ The jury was properly instructed with the Illinois Pattern Jury Instruction which provides that in treating a patient, a doctor must possess and apply the knowledge and use the skill and care that is ordinarily used by reasonably well-qualified doctors in the locality in which he practices or in similar localities in similar cases and circumstances, and that failure to do so is a form of negligence that is called malpractice. Illinois Pattern Jury Instructions, Civil, No. 105.01 (2d ed. 1971); see also *Northern Trust Co.*, 81 Ill. App. 3d at 1126-27.

In the instant case, the following colloquy occurred:

"Q. Based upon your review of these materials, Doctor, and mindful of the factual dispute that's in this case and assuming for the purpose of this question that Dr. Menet did not recommend further diagnostic studies to Bill Smith following the two X-rays that were taken at Glen Ellyn Clinic and told him that the abnormality shown on those films was old scar tissue, do you have an opinion, based upon a reasonable degree of medical certainty and as a Board-certified and practicing specialist in the field of internal medicine, as to whether or not Dr. Menet's conduct fell within the standard of good medical care in attending Mr. Smith?

* * *

BY THE WITNESS:

A. Yes, sir, I do have an opinion.

BY MR. SCHROEDER:

Q. And what is that opinion?

A. That further evaluation was indicated on the visit of April 5th, 1984, and that not to do further evaluation to try to come to a diagnosis of the X-ray abnormality was below the standard of care."

Further questioning was as follows:

"Q. Doctor, you're aware that Mr. Smith did not return to the Glen Ellyn Clinic following that visit of April 5th, 1984; correct?

A. Yes, sir, I am.

Q. Do you have an opinion as to whether the standard of good medical care would require any sort of follow-up action by Dr. Menet when Mr. Smith did not appear?

\* \* \*

A. Yes, sir.

BY MR. SCHROEDER:

Q. And what is that opinion?

A. That normally in a circumstance where there's an abnormal test and a patient does not follow up on it, either an attempt is made to reschedule the patient. If the patient cannot be contacted, then at least a letter is sent out to the address of last note on the record.

Beyond that, I don't think a physician can chase after a patient, but certainly that notification, either by phone or mail, is indicated."

The issue thus presented to this court is if the question of whether a doctor's conduct falls within "the standard of good medical care" is equivalent to asking whether a doctor possessed and applied the knowledge and used the skill and care that is ordinarily used by reasonably well-qualified doctors in similar circumstances. The problem with the question as phrased to plaintiff's expert is the use of the term "good."

"Highest degree of skill" and "best possible care" are phrases which have been rejected as setting a standard which is too high. (*Newell v. Corres* (1984), 125 Ill. App. 3d 1087, 1094; *Northern Trust Co. v. Skokie Valley Community Hospital* (1980), 81 Ill. App. 3d 1110, 1126-27.) The question is whether "good medical care" similarly sets the standard too high. The word "good" has on several occasions been used to define the standing of doctors with which the defendant doctor is to be compared. (*E.g., Newell v. Corres* (1984), 125 Ill. App. 3d 1087, 1094 ("the standard of care against which such a defendant's conduct is measured is not the highest degree of skill possible, but the reasonable skill which *a physician in good standing* in the community would use in a similar case") (emphasis added); *Cassady v. Hendrickson* (1985), 138 Ill. App. 3d 925, 934 ("defendant doctor is held to that degree of skill, knowledge, and *care exercised by a good practitioner* in the same or similar commu-

nity") (emphasis added).) However, exactly what "good" means or the connotation that it conveys is a function of how it is used. This is borne out by looking to Webster's, which variously defines "good" as:

"1 **good** *** 1 a (1): having a favorable or auspicious character: PROSPEROUS, BENEFICIAL *** (4): favorably affecting one's interests: leading to or attended by a favorable or prosperous outcome *** **b** (1): adapted to the end designed or proposed: satisfactory in performance: free from flaws or defects: USEFUL, SUITABLE, FIT *** (2): not impaired: SOUND *** (8): certain to elicit or produce a specified result *** **f** (1): conforming to the needs or requirements of the case: ADEQUATE, SUFFICIENT, SATISFACTORY *** (4): better than average but short of excellent *** 2 **c** (1): having or demonstrating the qualities or skills requisite or appropriate in a specified capacity or occupation (a [good] doctor) ***
2 **good** *** 1 a: something that possesses desirable qualities, promotes success, welfare, or happiness, or is otherwise beneficial ***." (Webster's Third New International Dictionary 978 (1971).)

"Standard of good medical care" is thus not as precise as the Illinois Pattern Jury Instructions instruction. And, when "good" is interpreted to mean better than average it contradicts the applicable standard as set forth in *Northern Trust Co. v. Skokie Valley Community Hospital* (1980), 81 Ill. App. 3d 1110, 1126-27. Consequently, we find that asking whether defendant's conduct fell within the "standard of good medical care" was improper.

■ Plaintiff argues that even if Dr. Golomb's testimony was insufficient to establish that Dr. Menet was negligent, testimony by defense witness Dr. Rosen did establish such negligence. We disagree.

Dr. Rosen stated that if, on April 5, 1984, Dr. Menet had told plaintiff that the X-ray abnormality that he had previously identified was old scar tissue, and plaintiff should not be concerned about it and go on vacation, Dr. Menet's treatment of plaintiff would fall outside the acceptable standard of care required of reasonably well-qualified physicians.

The problem with plaintiff's contention is twofold. First, Dr. Rosen's testimony does not eliminate any prejudicial impact that earlier questioning of Dr. Golomb might have had. Second, and more importantly, Dr. Golomb's testimony left open the possibility that the jury could have found negligence due to Dr. Menet's failure to follow up once plaintiff had missed his scheduled appointment.

In accordance with the foregoing analysis, we reverse the judgment of the trial court and remand for a new trial.

Reversed and remanded.

DUNN, J., concurs.

JUSTICE NASH, dissenting:

There are two grounds upon which I disagree with the majority and on which I would affirm the judgment of the circuit court in this case.

First, defendants have waived review of the issue, upon which the majority has found a basis to reverse the verdict and judgment below, for failure to make a specific objection in trial. Although the majority opinion finds that defendants' general objection to the form of the question in trial was sufficient to preserve the claimed error for review, its conclusion is not supported by the record.

After plaintiff's expert witness responded affirmatively to a foundational question that he had an opinion "whether or not Dr. Menet's conduct fell within the standard of good medical care in attending Mr. Smith," defendants objected, as follows:

> "MR. CUNNINGHAM: Your Honor, I must interpose an objection based on that Wilson v. Clark case. I think there has been an inappropriate foundation laid and I also object to the form of the question as well."

Defendants' objection was overruled without further discussion and the witness responded that it was his opinion that defendant's conduct "was below the standard of care." After further testimony by the witness defendants again objected, as follows:

> "MR. CUNNINGHAM: Your Honor, once again I would make an objection based on Wilson vs. Clark, based on foundation, and based on the wording of the question.
>
> I think it's inappropriate in accordance with the jury instructions that are tendered to the jury at the end of the case as far as having them being able to evaluate what it is the doctor testified to."

After a discussion outside the presence of the jury which is not contained in the record, defendants' objection was overruled.

In their post-trial motion defendants did offer the specific objection to the use of the phrase "good" medical care in qualifying plaintiff's medical expert which is now made on appeal. They also there raised the objection to foundation made in trial under *Wilson v.*

*Clark* (1981), 84 Ill. 2d 186.

On appeal, however, defendants neither cite nor address *Wilson v. Clark*, to which they referred in trial in support of the objection made then. In this court defendants contend, instead, that the use of the term "good" medical care in qualifying plaintiff's expert witness to express an opinion as to the care with which defendant treated plaintiff was error requiring reversal and a new trial. In my view, the majority does not give proper attention to those long-standing rules of waiver which apply when a party seeks review of an issue on appeal. The general rule was stated by our supreme court in *DeMarco v. McGill* (1949), 402 Ill. 46, 55, as follows:

> "The rule is that if evidence objected to is competent for any purpose, the party objecting must call the attention of the court specifically to any limitations which he believes should be imposed upon its application to the issues. The trial court is entitled to know what specific insufficiencies exist in the introduction of evidence, and it is unfair to make objections on appeal after concealing the real objections from the lower court. (*People v. McCurrie*, 337 Ill. 290.) The rule is that a party objecting to evidence must point out the objections specifically so as to afford the adverse party an opportunity to correct it. (*Illinois Iowa Power Co. v. Rhein*, 369 Ill. 584.) A party who seeks to exclude a piece of evidence should be explicit and disclose to the trial court all defects in the proposed proof which he expects to urge upon this court in the event of an appeal. *Forest Preserve Dist. v. Lehmann Estate, Inc.* 388 Ill. 416."

It is well established that to be preserved for review "an issue must have been specifically raised both by a timely objection at trial and in defendant's post-trial motion." (*Von Seggren v. Smith* (1987), 151 Ill. App. 3d 813, 815; *Hargrove v. Neuner* (1985), 138 Ill. App. 3d 811, 816.) Where the grounds of objection to the admission of testimony were not included in the objection made in the trial court, it will not be considered on appeal. (*Pyse v. Byrd* (1983), 115 Ill. App. 3d 1003, 1006-07; see also *McMahon v. Richard Gorazd, Inc.* (1985), 135 Ill. App. 3d 211, 225-26; *Moore v. Farmers Insurance Exchange* (1982), 111 Ill. App. 3d 401, 411.) An objection must be sufficiently specific to apprise the trial court of the grounds of objection. (*Dotson v. Sears, Roebuck & Co.* (1987), 157 Ill. App. 3d 1036, 1041; see *Dixon v. Industrial Comm'n* (1975), 60 Ill. 2d 126, 132.) It is also the rule that specific objections to evidence, based on particular grounds, are a waiver of objections to all grounds not specified. (*Barreto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 130.) Where the ground of

an objection is of a character that may be remedied or avoided, the party objecting must point out the objection specifically, so as to give his opponent the opportunity to correct it. *Chicago Steel & Wire Co. v. Coating Research* (1977), 53 Ill. App. 3d 943, 945-46.

These precepts were not followed in trial here, where defendant urged other objections to the testimony of plaintiff's expert witness, but did not call to the attention of the trial court or plaintiff, at that time, the claimed error in the form of plaintiff's question to the witness. By this means defendant has, thus far, succeeded in preserving for future use a claim of error which the trial court had no opportunity to consider during trial, and which plaintiff could not revise or correct in trial, if she wished to do so. I would hold that defendants have waived consideration of this issue on appeal.

If considered on the merits, I would also find that the use of the phrase "good medical care" in qualifying plaintiff's expert witness to give an opinion does not require reversal in this case.

The jury was instructed as to the requisite standard of care by which defendant's conduct was to be measured by an instruction combining Illinois Pattern Jury Instructions, Civil, Nos. 105.01 and 105.02 (2d ed. 1971) (hereinafter IPI Civil 2d), as follows:

> "In treating a patient, a doctor who holds himself out as a specialist and undertakes service in a particular branch of medical, surgical or other healing science, must possess and apply the knowledge and use the skill and care which reasonably well-qualified specialists in the same field, practicing in the same locality or in similar localities, ordinarily would use in similar cases and circumstances. A failure to do so is a form of negligence called malpractice."

Defendants do not now question the correctness of the instruction given by the trial court. They urge, however, that the standard of care expressed in the instruction has been equated to that of "acceptable medical standards," citing *Gorman v. St. Francis Hospital* (1965), 60 Ill. App. 2d 441, and *Alton v. Kitt* (1982), 103 Ill. App. 3d 387, and that plaintiff's medical expert incorrectly defined the standard of care applicable to defendant as that of "good medical care," a higher standard than is required.

I would note first that plaintiff's expert, Dr. Golomb, at no time sought to define the applicable standard of care in the trial of the case. To the contrary, the witness declined to do so when plaintiff's counsel inquired of him whether Dr. Menet's failure to do further evaluation of decedent after his April 5, 1984, visit was medical negligence. The witness responded, "Well, you're defining it. You asked

me if it was below the standard of care and I've stated it is." The reference to "good" medical care, to which defendants now object with specificity, arose in this case only during the qualifying questioning of the expert witness by plaintiff's counsel in which he inquired, "[D]o you have an opinion, based upon a reasonable degree of medical certainty and as a Board-certified and practicing specialist in the field of internal medicine, as to whether or not Dr. Menet's conduct fell within the standard of *good medical care* in attending Mr. Smith." (Emphasis added.) The witness responded that it was his opinion Dr. Menet's conduct was below the standard of care, and he related the basis for his opinion as reflected in defendant's conduct.

I do not share the hypertechnical concern of my colleagues that by this exchange the jury was led to consider that the standard of care to be applied was anything more or less than that stated in the instruction given by the trial court. Use of the word "good" in the context applied here does no violence to the court's instruction and does not suggest defendants should be held to any higher standard of care than expressed by that instruction. Reference in the opinion to the dictionary definitions of "good" is unnecessary, and perhaps misleading, as the jury was not so instructed and could only have tested defendant's conduct on the standard set forth in the court's instruction.

As noted in the comment to IPI Civil 2d No. 105.01, the court in *Holtzman v. Hoy* (1886), 118 Ill. 534, 536, stated that the medical standard of care requires the skill "which a *good* physician would bring to a similar case under like circumstances." (Emphasis added.) (IPI Civil 2d No. 105.01, Comment, at 319.) This court stated the rule in *Olander v. Johnson* (1930), 258 Ill. App. 89, as follows:

"The duty which a physician and surgeon owes his patient is to bring to the case at hand that degree of knowledge, skill, and care which a good physician and surgeon would bring to a similar case under like circumstances. While this rule, on the one hand, does not exact the highest degree of skill and proficiency attainable in the profession, it does not contemplate merely average merit. (*Holtzman v. Hoy* 118 Ill. 534; 21 R. C. L. Physicians and Surgeons, sec. 27.) To this extent he is liable and no further. He is not required to possess the highest, but reasonable skill. The burden of proof is upon the plaintiff in an action for malpractice to show the want of such care, skill, and diligence and also to show that the injury complained of resulted from failure to exercise those requisites. (*McKee v. Allen* 94 Ill. App. 147; *Goodman v. Bigler*, 133 Ill. App. 301;

21 R. C. L. Physicians and Surgeons, sec. 49.)" 258 Ill. App. 89, 95.

I have no quarrel with the settled rule that the standard of care against which a medical defendant's conduct is to be measured is that "reasonable skill which a physician in good standing in the community would use in a similar case" (*Newell v. Corres* (1984), 125 Ill. App. 3d 1087, 1094), and it is not measured against the highest degree of skill possible, or a best possible care standard (125 Ill. App. 3d 1087, 1094; *Northern Trust Co. v. Skokie Valley Community Hospital* (1980), 81 Ill. App. 3d 1110, 1126-27). However, that is not the question presented in this case. The standard of care to be applied was correctly stated in the instructions to the jury. Use of the phrase "good medical care" in qualifying the expert witness was clearly not intended to elevate the requisite standard of care and would be considered as equivalent to the phrase "acceptable medical standards" which defendant offers as a short description of the standard of care. In the cases noted herein, the courts commonly use language such as "good standing," "good medical practice," "physicians in good practice," and "good practitioner" in describing the medical standard of care and, in my view, that is all that occurred here. "Good" medical care in this context means no more than the application of the skill and knowledge which a reasonably well-qualified practitioner in the field would have used. When the expert witness responded that defendant's conduct was below the requisite standard of care, and the jury was instructed as it was, no untoward prejudice to defendants could have followed from the form of the question to which they now object.

For these reasons I would affirm the judgment of the circuit court.