CYNTHIA RILEY, Special Adm'r of the Estate of John E. Riley III, Plaintiff-Appellee, v. PRAFULLA KONERU *et al.*, Defendants-Appellants.

First District (1st Division)   No. 1—91—0641

Opinion filed May 4, 1992.

Bell, Boyd & Lloyd, of Chicago (William L. Barr, Jr., and Brigid M. Mc-Grath, of counsel), for appellants.

Keith L. Young, of Chicago, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:
During 1980, plaintiff, Cynthia Riley, was pregnant and received prenatal care from defendant Dr. Prafulla Koneru. Unfortunately, on

August 5, 1980, plaintiff delivered a stillborn fetus by cesarean section. Subsequently, plaintiff, on behalf of the stillborn fetus, brought a medical malpractice action against Koneru and the medical corporation with which Koneru was associated, North Suburban Clinic, Ltd. The jury returned a verdict against defendants for $400,000, and the trial judge denied defendants' post-trial motions. Defendants appeal.

We affirm.

At trial, plaintiff's case in chief was based primarily on the testimony of her expert, Dr. Jeffrey Ellis. Ellis, who is board certified in obstetrics and gynecology and who has taught both at Rush Medical College and Northwestern University, stated he was familiar with the standard of care expected of obstetricians treating pregnancies similar to plaintiff's in the metropolitan Chicago area in 1980. It was Ellis' opinion that Koneru should have performed an ultrasound examination on July 21, 1980, to determine whether a condition known as hydramnios was present. Ellis also stated that Koneru should have hospitalized plaintiff when Koneru discovered, on August 1, 1980, that the fetus was lying horizontally in the womb. According to Ellis, Koneru also should have evaluated plaintiff when plaintiff complained of lack of fetal movement, cramping, and "spotting" on August 2, 1980. Finally, Ellis asserted that Koneru should have performed an immediate cesarean section on plaintiff. Ellis concluded Koneru's failure to take such action deviated from the standard of care and resulted in the fetus' death.

## I

Defendants argue that plaintiff failed to establish the applicable standard of care because Ellis evaluated Koneru's conduct against a higher standard of care than that imposed by Illinois law. Defendants point to several portions of Ellis' testimony where he defined the standard of care to mean "the highest functioning level." Specifically, defendants refer to the following testimony:

> "The best medicine is practiced by following the standard of care. *** [T]he highest degree of knowledge then contributes to the standard of care."

Ellis further stated that he was

> "equating standard of care with what I consider to be good medical practice based on current information to optimize outcomes. *** My understanding is, of standard of care, is what Mr. Young [plaintiff's attorney] and I described as good obstetrical practice based on scientific evidence to optimize outcome."

■ Plaintiff responds that defendants have waived this argument by failing to properly object to Ellis' testimony. Although plaintiff argues that defendants' argument has been waived for failure to object, the record indicates that defendants did, indeed, object to Ellis' testimony as lacking the applicable standard of care. As a result, we find these objections were sufficiently specific to preserve defendants' argument for appeal.

■ Generally, in a medical negligence action, a plaintiff must establish by expert testimony the standard of care against which the defendant's conduct should be measured. (*Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 381 N.E.2d 279; *Lebrecht v. Tuli* (1985), 130 Ill. App. 3d 457, 473 N.E.2d 1322; *Bartimus v. Paxton Community Hospital* (1983), 120 Ill. App. 3d 1060, 458 N.E.2d 1072; *Smith v. St. Therese Hospital* (1982), 106 Ill. App. 3d 268, 435 N.E.2d 939.) The plaintiff must then show by affirmative evidence that the defendant's conduct was negligent in light of that standard and that the negligence caused injury. *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 328 N.E.2d 301.

■ A plaintiff may rely upon the defendant's and the defendant's expert's testimony in establishing the applicable standard of care. (*Metz v. Fairbury Hospital* (1983), 118 Ill. App. 3d 1093, 455 N.E.2d 1096.) The defendant is held to that degree of skill, knowledge, and care exercised by a good practitioner in the same or similar community. (*Bartimus v. Paxton Community Hospital* (1983), 120 Ill. App. 3d 1060; *Hirn v. Edgewater Hospital* (1980), 86 Ill. App. 3d 939, 408 N.E.2d 970.) However, if only one standard of care exists, the national standard and the community standard are to be considered the same. *Hunter v. Sukkar* (1982), 111 Ill. App. 3d 169, 443 N.E.2d 774.

An examination of Ellis' entire testimony belies defendants' claims. The portions of that testimony to which defendants refer were statements made by Ellis during defendants' attorney's cross-examination. Defendants' attorney's questioning was an attempt to have Ellis recharacterize his direct testimony in which he established the standard of care in the Chicago metropolitan area with regard to obstetrics. Ellis' responses do not evince a retreat from Ellis' opinion of the standard of care in 1980 or Koneru's violation of that standard. The cross-examination appears to be designed to show Ellis' misunderstanding of the meaning of the legal term "standard of care." Ellis himself recognized the direction of defense attorney's questioning when he responded "I am not an attorney and I don't understand legal terms. And I'm testifying from the point of view of a physician who has an opinion."

■ Defendants cite *Smith v. Menet* (1988), 175 Ill. App. 3d 714, 530 N.E.2d 277, *appeal denied* (1989), 124 Ill. 2d 562, 535 N.E.2d 921, in support of their argument regarding the standard of care. In *Menet*, the court addressed whether "good" medical care could be interpreted to mean better than average, thereby imposing a greater standard of care than the law requires. The court noted that Illinois courts previously have rejected the phrases "highest degree of skill" and "best possible care" because they set too high a standard. (*Menet*, 175 Ill. App. 3d at 718.) The court did note, however, that the word "good" has been used to define the standing of doctors with which the defendant doctor is to be compared. (*Menet*, 175 Ill. App. 3d at 718.) As plaintiff notes, Ellis did not restrict the standard of care to good care, but rather to the "standard practice." Based on the foregoing, the circuit court did not err in allowing Ellis' testimony.

## II

■ Defendants next claim that damages for loss of society of a stillborn fetus are not available to its parents, arguing that this court should not follow *Smith v. Mercy Hospital & Medical Center* (1990), 203 Ill. App. 3d 465, 560 N.E.2d 1164.

Defendants' arguments on this point are groundless in light of our supreme court's holding in *Seef v. Sutkus* (1991), 145 Ill. 2d 336, 583 N.E.2d 510. There, the court noted that in *Bullard v. Barnes* (1984), 102 Ill. 2d 505, 468 N.E.2d 1228, it recognized that parents of a wrongfully killed minor child are entitled to a presumption of injury for the loss of the child's society. Relying on that holding, the court found no valid reason or distinction to deny similar recovery for the death of a viable fetus. (*Seef*, 145 Ill. 2d at 338.) Moreover, the court specifically rejected defendants' argument that *Hunt v. Chettri* (1987), 158 Ill. App. 3d 76, 510 N.E.2d 1324, *appeal denied* (1987), 116 Ill. 2d 555, 515 N.E.2d 108, correctly states Illinois law with regard to the loss of society of a stillborn fetus. *Seef*, 145 Ill. 2d at 341 (Miller, C.J., specially concurring).

## III

Defendants finally contend that the jury's damage award was excessive and that the circuit court erred by not granting its post-trial motion for remittitur.

■ Damages are a question of fact to be decided by the jury, and courts are reluctant to interfere with the jury's exercise of discretion in this area. (*Chambers v. Rush-Presbyterian-St. Luke's Medical Center* (1987), 155 Ill. App. 3d 458, 508 N.E.2d 426, *appeal denied* (1987),

116 Ill. 2d 549, 515 N.E.2d 102; *Mileur v. Briggerman* (1982), 110 Ill. App. 3d 721, 442 N.E.2d 1356.) A reviewing court will not disturb a jury's award of damages unless it is obviously the result of passion or prejudice. (*Shaheed v. Chicago Transit Authority* (1985), 137 Ill. App. 3d 352, 484 N.E.2d 542.) Furthermore, an award is not excessive unless it falls outside the necessary limits of fair and reasonable compensation or it shocks the judicial conscience. (*Shaheed*, 137 Ill. App. 3d at 359.) A jury's award will not be subject to remittitur where it falls within the flexible range of conclusions which can be reasonably supported by the facts. *Guerrero v. City of Chicago* (1983), 117 Ill. App. 3d 348, 453 N.E.2d 767.

■ The evidence presented at trial revealed that plaintiff and her husband had three children and enjoyed a satisfying family life, sharing in the activities of each child. Each parent expressed aspirations for the child they expected in 1980. Moreover, the jury properly was instructed not to base any damage awards on prejudice, passion or sympathy and was also instructed not to consider arguments as evidence. In light of this, no basis exists for this court to disturb the jury's award.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.