2019 IL App (1st) 172933

FIRST DISTRICT
FOURTH DIVISION
June 20, 2019

No. 1-17-2933

| | | |
|---|---|---|
| | ) | Appeal from the |
| SHERRI MIYAGI, | ) | Circuit Court of |
| | ) | Cook County |
| Plaintiff-Appellee and Cross-Appellant, | ) | |
| | ) | |
| v. | ) | No. 14 L 774 |
| | ) | |
| DEAN TRANSPORTATION, INC., | ) | |
| | ) | Honorable |
| Defendant-Appellant and Cross-Appellee. | ) | Thomas V. Lyons II, |
| | ) | Judge Presiding. |

JUSTICE REYES delivered the judgment of the court, with opinion.
Presiding Justice McBride concurred in the judgment and opinion.
Justice Gordon specially concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff Sherri Miyagi was visiting a Walgreens pharmacy when she was injured by a

hand truck operated by an employee of defendant Dean Transportation, Inc. (Dean). Plaintiff

filed a complaint, alleging negligence and *respondeat superior* against defendant. Prior to the

jury trial, defendant admitted its negligence and a trial was held on the issues of causation and

damages. Following the trial, the jury awarded plaintiff $2.4 million in noneconomic damages,

$300,000 for past medical expenses, and $7.3 million for future medical expenses.

¶ 2     Defendant filed a posttrial motion, seeking a judgment notwithstanding the verdict, a new

trial on all issues, a new trial on damages only, or, in the alternative, a remittitur of all but

$5703.68 of the future medical expenses award. The trial court denied defendant's request for a judgment notwithstanding the verdict and for a new trial. The trial court did, however, grant defendant's request for a remittitur but in the amount of $3.65 million, which represented 50% of the jury award for future medical expenses.

¶ 3     Defendant now appeals arguing that the trial court abused its discretion in remitting only 50% of the jury's $7.3 million future medical expenses award and that the trial court erred in denying the motion for a new trial. Plaintiff cross-appeals, maintaining that the trial court abused its discretion when it entered the remittitur and requests this court reinstate the jury's full award of $7.3 million for future medical expenses. For the reasons that follow, we affirm the judgment.

¶ 4                                I. BACKGROUND

¶ 5     The facts surrounding plaintiff's injury are uncontested. Because the appeal is limited to the issue of the propriety of the jury's award of future medical expenses and the remittitur, we set forth only those facts relevant to this appeal.

¶ 6     At trial, plaintiff presented the testimony of Dr. Timothy Lubenow and Dr. Ira Goodman, board certified pain management specialists who treated plaintiff; Dr. Jeffery Coe, plaintiff's retained expert; and herself. Defendant then presented the testimony of Dr. Kenneth Candido, defendant's retained expert; Dr. Mark Shukhman, plaintiff's psychiatrist; Dr. Mindy Nora, plaintiff's treating physician; and Dr. Howard Stone, plaintiff's podiatrist. This testimony, along with evidence presented at the trial, established the following facts.

¶ 7     On March 26, 2012, plaintiff, a 50-year-old dentist at the time of trial, was visiting a Walgreens pharmacy to pick up a prescription. As plaintiff walked away from the pharmacy counter, she was struck in the right leg by a hand truck operated by one of defendant's employees. The hand truck was so overloaded with crates of milk that the employee's view was

blocked. That evening, when the pain from the incident did not decrease, plaintiff visited the emergency room and was treated for a contusion. The following day, plaintiff met with her general physician, Dr. Nora, who examined the right leg and discovered a contusion and informed plaintiff it could take some time for the bruise to heal. Six weeks later, the pain in her right leg increased and had spread to her right foot. Plaintiff then engaged in physical therapy for her right leg and foot, which failed to alleviate the pain. Plaintiff then was examined by a podiatrist, Dr. Stone, who referred her to Dr. Goodman, a pain medicine specialist.

¶ 8     After a thorough examination, Dr. Goodman diagnosed plaintiff with complex regional pain syndrome (CRPS), a neurological pain condition that can result from an initial trauma. The body then responds to that particular traumatic event whereby the nervous system amplifies the pain message received from that injured part of the body. Dr. Goodman prescribed morphine for plaintiff's pain and scheduled a follow-up visit. When plaintiff's pain did not subside over time, Dr. Goodman performed a series of sympathetic nerve blocks and radiofrequency ablations (burning of the nerve). These treatments decreased plaintiff's pain but only temporarily. Plaintiff later began experiencing similar pain in her left leg and foot, which is known as a "mirror image spread," which, according to Dr. Goodman, is not uncommon in individuals with CRPS. Dr. Goodman then performed a series of sympathetic nerve blocks and radiofrequency ablations aimed at plaintiff's left extremity. Plaintiff experienced mixed success with these treatments, and Dr. Goodman recommended that plaintiff undergo a trial period for the use of a spinal cord stimulator, a medical device that delivers a mild electronic current to one's spinal cord to interfere with the pain signals sent to the brain from the pain source. Plaintiff reported that her pain decreased with the trial spinal cord stimulator and, with Dr. Goodman's approval, she had a permanent spinal cord stimulator implanted to combat the pain.

¶ 9 Dr. Lubenow, who also treated plaintiff for CRPS, testified that plaintiff was currently taking morphine for pain and that over time patients build up tolerances to this kind of medication. According to Dr. Lubenow, plaintiff will require higher doses of medication over time and that dependence is a natural corollary in this situation. Dr. Lubenow also testified that plaintiff will need pain medication and the spinal cord stimulator for the rest of her life. This testimony was corroborated by Dr. Coe, a vocational rehabilitation specialist.

¶ 10 Even with the spinal cord stimulator and pain medications, plaintiff was not able to resume a fully functioning life. Plaintiff could only walk short distances and was not allowed to drive an automobile with her spinal cord stimulator in use. Plaintiff still practiced dentistry, but instead of seeing 50 patients a week, she could only see between 6-10 and had to cancel patient visits when she was in terrible pain. The pain further isolated her from family and friends. Whereas prior to her injury she had a close relationship with her family and friends, plaintiff was no longer able to maintain that relationship with them due to the pain. She even kept a refrigerator and microwave next to her bed so she could prepare her meals without leaving the bed. Plaintiff also experienced sleeplessness at night and fatigue during the day. Plaintiff became depressed and sought the services of a psychiatrist, Dr. Shukhman.

¶ 11 The heart of this appeal, however, does not revolve around plaintiff's pain and suffering or loss of a normal life, but instead pertains to the testimony of plaintiff's physicians and medical experts who testified regarding the extent of her future medical expenses. Dr. Lubenow, a pain management specialist, testified that plaintiff has a permanent and progressive form of CRPS which will require pain medications and management of her spinal cord stimulator for the rest of her life. In regard to the spinal cord stimulator, Dr. Lubenow testified that the electrical leads of the spinal cord stimulator, which are anchored deep in the muscle, tend to migrate and if this

happens, then plaintiff would need to undergo surgery to adjust the electrical leads. In addition, the batteries in the spinal cord stimulator would need to be replaced once every eight years through a minor surgical procedure. Dr. Coe and Dr. Goodman agreed with the future medical expenses as explained by Dr. Lubenow and opined that plaintiff would need treatment from a pain medicine specialist for the rest of her life.

¶ 12　Defendant's expert witness, Dr. Kenneth Candido, opined that plaintiff was not suffering from CRPS but instead had opioid induced hyperalgesia, a condition wherein the opioid pain medication an individual is taking to treat pain in fact makes the pain worse. However, when describing CRPS, he opined that "physical therapy is the mainstay of treatment for CRPS." Dr. Candido further testified that "we see a lot of depression, anxiety, panic and[,] in some of the cases[,] post traumatic stress" in patients with CRPS and that if those conditions are not treated the patient will not get better.

¶ 13　The defense also presented the testimony of Dr. Shukhman, plaintiff's psychiatrist and an addiction medicine specialist, who testified that plaintiff suffered from depression. He further testified regarding plaintiff's desire to decrease the amount of pain medication she was taking.

¶ 14　In regards to plaintiff's past medical expenses, the parties stipulated that plaintiff's physicians would testify to a reasonable degree of medical certainty that the amount of $300,000 reasonably reflected the necessary charges for medical services related to the March 26, 2012, occurrence. Plaintiff also testified that she was 50 years old at the commencement of the trial and her life expectancy was 99 years of age based on her familial history.

¶ 15　In closing arguments, plaintiff stressed that CRPS is a permanent and progressive disease and requested $20 million in total damages. In response, defendant maintained that if plaintiff was able to meet her burden of proof, the damages should be limited to $900,000. In rebuttal,

plaintiff argued that the jury could "extrapolate" her future medical costs based on the amount of her past medical expenses.[1]

¶ 16    After being instructed by the trial court, the jury deliberated and returned a verdict in favor of plaintiff for $10 million. The verdict was itemized as follows:

| | |
|---|---|
| Loss of normal life experienced: | $200,000 |
| Loss of normal life to be experienced in the future: | $1,000,000 |
| Pain and suffering experienced: | $ 200,000 |
| Pain and suffering to be experienced in the future: | $1,000,000 |
| The disfigurement resulting from the injury: | 0 |
| The present cash value of the reasonable expense of medical care, treatment, and services received: | $300,000 |
| The present cash value of reasonable medical care, treatment, and services to be received in the future: | $7.3 million |

¶ 17    Defendant filed a posttrial motion seeking a judgment notwithstanding the verdict, a new trial on all issues, a new trial on damages only, or, in the alternative, a remittitur of all but $5703.68 of the future medical expenses award. After the motion was fully briefed and argued, the trial court denied defendant's request for a judgment notwithstanding the verdict and for a new trial. The trial court did, however, grant defendant's request for a remittitur, finding the evidence did not support the $7.3 million future medical expenses award. In so finding, the trial court observed that plaintiff did, however, present evidence that her condition was chronic and permanent, that she would suffer pain for the remainder of her life, that her spinal cord stimulator would require maintenance, and that CRPS is a progressive disease. The trial court accordingly

---

[1]We observe that defendant references a demonstrative chart plaintiff utilized during her closing argument, which set forth the damage amounts requested. This chart, however, does not appear in the record on appeal, and plaintiff did not state in her closing the exact amount she sought for future medical expenses.

entered a remittitur in the amount of $3.65 million. This appeal followed.

¶ 18                                    II. ANALYSIS

¶ 19    On appeal, defendant argues that the trial court abused its discretion when it entered the remittitur and denied its motion for a new trial. Defendant maintains that there is no evidence to support the jury's excessive $7.3 million verdict for future medical expenses or the trial court's arbitrary 50% remittitur of that award. Plaintiff cross-appeals, also arguing that the trial court improperly entered a remittitur but maintains she is entitled to the jury's full $7.3 million award.

¶ 20    "A remittitur is an agreement by the plaintiff to relinquish, or remit, to the defendant that portion of the jury's verdict which constitutes excessive damages [citations] and to accept the sum which has been judicially determined to be properly recoverable damages [citation]." *Haid v. Tingle*, 219 Ill. App. 3d 406, 411 (1991). The inherent power of a court to order a remittitur of excessive damages, in appropriate and limited circumstances, is long recognized and accepted. *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 411-12 (1997) (collecting cases). A remittitur should be employed only when the damages award (1) falls outside the range of fair and reasonable compensation, (2) appears to be the result of passion or prejudice, or (3) is so large that it shocks the judicial conscience. *Klingelhoets v. Charlton-Perrin*, 2013 IL App (1st) 112412, ¶ 67.  Remittitur should not be employed when the award falls within the flexible range of conclusions that can be reasonably supported by the facts. *Young v. Alden Gardens of Waterford, LLC*, 2015 IL App (1st) 131887, ¶ 80; *Epping v. Commonwealth Edison Co.*, 315 Ill. App. 3d 1069, 1072 (2000); *Riley v. Koneru*, 228 Ill. App. 3d 883, 888 (1992). We review the trial court's decision to grant a remittitur for an abuse of discretion. *Aguilar-Santos v. Briner*, 2017 IL App (1st) 153593, ¶ 76. Similarly, we review the trial court's ruling on a new trial for an abuse of discretion. *Maple v. Gustafson*, 151 Ill. 2d 445, 455 (1992). An abuse of discretion

occurs only when the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *Hoffman v. Northeast Illinois Regional Commuter R.R. Corp.*, 2017 IL App (1st) 170537, ¶ 53.

¶ 21 Defendant asserts that this case is similar to *Richardson v. Chapman*, 175 Ill. 2d 98, 113 (1997), wherein our supreme court held that the disparity between the trial testimony and the jury's eventual award was so great that a remittitur of $1 million was warranted. While we find the general propositions of law set forth in *Richardson* to be instructive (see *id.* at 113-14), the facts of *Richardson*, however, do not support defendant's position. In that case, the plaintiffs presented the testimony of an economist who opined that the plaintiffs' future medical expenses were between $7,371,914 and $9,570,034. *Id.* at 106. The jury returned a verdict for $11 million in future medical expenses, which exceeded the economist's highest figure by close to $1.5 million. *Id.* at 112. The defendants ultimately appealed. Our supreme court concluded that the amount awarded by the jury was excessive and reduced the future medical expenses damages by $1 million. *Id.* at 113. In reaching this determination, our supreme court focused on the economist's testimony and allowed only $500,000 over the expert's highest figure to account for "expected future medical costs for which no specific estimates were introduced." *Id.*

¶ 22 Here, the entire trial consisted of testimony regarding expected future medical costs for which no specific estimates were provided. Unlike in *Richardson*, no economist testified here regarding future medical expenses. In fact, evidence from an economist is not required to sustain a future medical expenses award. See *Rainey v. City of Salem*, 209 Ill. App. 3d 898, 907 (1991). Defendant maintains that the remarks of plaintiff's counsel in closing are equivalent to the testimony of the economist in *Richardson* and therefore we should be bound to counsel's figures of $25,000 to $100,000 for future medical expenses. Defendant's argument is unavailing.

Besides the fact that counsel did not make any statements to the jury regarding these figures during closing argument, the demonstrative damages chart—which purportedly demonstrated the damages requested—was not included in the record on appeal. In addition, it is well established that the statements of counsel during closing argument are not evidence, and the jury was so instructed on that point. See *Simmons v. Garces*, 198 Ill. 2d 541, 568 (2002). Our case law further establishes that " '[a] jury's award of a verdict higher than that requested by counsel does not, by itself, indicate that the jury acted out of passion or prejudice.' " *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 250-51 (2006) (quoting *Fedt v. Oak Lawn Lodge, Inc.*, 132 Ill. App. 3d 1061, 1072 (1985)).

¶ 23      We find *Bruntjen v. Bethalto Pizza, LLC*, 2014 IL App (5th) 120245, a case relied on by plaintiff, to be more instructive. There, the plaintiff obtained a $2.28 million jury verdict for a traumatic brain injury he sustained when he was involved in an automobile accident, which included $196,000 for past medical expenses and $461,000 for future medical expenses. *Id.* ¶¶ 1, 93, 96. The testimony at trial established that plaintiff had three surgeries as a result of the accident, was hospitalized for over two weeks, and then was transferred to a rehabilitation facility for another two-week period before being released to outpatient therapy. *Id.* ¶ 97. His physicians testified at trial that the plaintiff continued to suffer from a seizure disorder, migraine headaches, deficits in attention, memory impairment, cognitive deficits, endocrine disorders, and hydrocephalus. *Id.* ¶¶ 98-99. The plaintiff was prescribed two antiseizure medications and one migraine prevention medication, and he could require antiseizure medication for life. *Id.* ¶ 98.

¶ 24      On appeal, the defendant argued that the future medical expenses award was excessive and rested upon the contention that there was no evidence that the plaintiff needed future medical care. *Id.* ¶ 105. The defendant further asserted that the plaintiff's future medical expenses should

be limited to the cost of $140 per month for his medication over his 51-year life span. *Id.* The reviewing court disagreed with the defendant, finding there was sufficient testimony regarding the plaintiff's need for future medical care, and specifically observed that the plaintiff's doctors testified "regarding a number of complications and conditions that plaintiff was at risk for or could likely develop as time passed." *Id.* ¶ 107. The reviewing court also observed that there was testimony the jury could have believed regarding the need for an ongoing trained caretaker. *Id.* In upholding the jury's future medical expenses award, the reviewing court acknowledged that there was no direct testimony as to the particular amount of damages in the case. *Id.* ¶ 108. However, the lack of such direct testimony is not a sufficient reason alone to attack a jury verdict. *Id.*

¶ 25    While *Bruntjen* did not involve a trial court's remittitur, it is instructive because the *Bruntjen* jury was similarly not provided with direct evidence as to the cost of future medical expenses. Instead, the *Bruntjen* jury was presented with testimony that complications could arise in the future that, when combined with the plaintiff's lengthy life expectancy, warranted a significant award of future medical expenses. See *id.* ¶ 107. Here, the medical experts testified that plaintiff is suffering from a permanent condition that would require care for the rest of her life. That care included pain medication, office visits, surgeries, postoperative care, psychiatric care, and physical therapy. The jury was also presented with plaintiff's 99-year life expectancy, and thus it would be reasonable for the jury to infer, as was done in *Bruntjen*, that she would require an increase in medical care and treatment as she ages. See *id.*

¶ 26    As noted, our supreme court instructs us to view the application of a remittitur on a "case-by-case" basis. *Best*, 179 Ill. 2d at 413. Accordingly, we turn to examine the specific evidence presented regarding future medical expenses and whether the trial court abused its

discretion when it granted a remittitur in the amount of $3.65 million based on that evidence.

¶ 27    Defendant argues that the evidence presented through plaintiff's witnesses established plaintiff would need nothing more than continued oral pain medication, pain management doctor visits, spinal cord stimulator battery replacements and maintenance, possible surgery, and postoperative care. According to defendant, these costs would range from $25,000 to $100,000 at most.

¶ 28    Plaintiff asserts the opposite: that the evidence amply demonstrated that she was entitled to the full $7.3 million award, and therefore the trial court abused its discretion when it entered the remittitur. Plaintiff stresses that the assessment of damages is an issue of fact for the jury to decide and that the jury was justified in relying upon an injury's severity, permanency, progressive nature, increasing care, future deterioration, and complications in determining the amount of a future medical expenses damages award. According to plaintiff, the evidence demonstrated that she will require ongoing medical care and medical management from a pain management specialist, that she will require at least seven surgical procedures for battery replacements for her spinal cord stimulator and possibly other surgical procedures related to the stimulator's electrical leads, and that her CRPS symptoms could worsen over time.

¶ 29    Our consideration of whether the trial court properly granted the remittitur is guided by the principle that "[t]he determination of damages is a question reserved to the trier of fact, and a reviewing court will not lightly substitute its opinion for the judgment rendered in the trial court." *Richardson*, 175 Ill. 2d at 113. "However, if, after considering all the evidence, the trial judge concludes that the jury verdict is excessive, the judge may not allow the verdict to stand but must act to correct the injustice; and the failure to do so is, itself, error." *Haid*, 219 Ill. App. 3d at 410. "[T]he application of remittitur should be considered on a case-by-case basis because

the evidence and circumstances supporting verdicts must be carefully examined before a jury's assessment of damages is reduced." *Best*, 179 Ill. 2d at 413.

¶ 30    In this instance, the trial court entered a remittitur on the future medical expenses only. "Future damages by their nature are always subject to some uncertainties." *Bruntjen*, 2014 IL App (5th) 120245, ¶ 106. Thus, "it [is] impossible to establish a precise formula to determine whether a particular award is excessive or not." *Snelson*, 204 Ill. 2d at 37. Some factors to consider include the extent of the injuries suffered and the permanency of the plaintiff's condition, the plaintiff's age, the possibility of future deterioration, the extent of the plaintiff's medical expenses, and the restrictions imposed on the plaintiff by the injuries. *Klingelhoets v. Charlton-Perrin*, 2013 IL App (1st) 112412, ¶ 67. Courts allow the trier of fact a certain degree of leeway in awarding compensation for medical costs that, as shown by evidence, are likely to arise in the future but are not specifically itemized in testimony. *Richardson*, 175 Ill. 2d at 112. Indeed, the absence of direct testimony as to a particular amount of damages is not sufficient reason alone to reduce a jury verdict. *Rainey*, 209 Ill. App. 3d at 907.

¶ 31    The evidence adduced at trial demonstrated that plaintiff sustained a permanent injury that left her with chronic, permanent, debilitating pain. The evidence further demonstrated that her disease is progressive in nature, meaning that it can spread (as the evidence already established it had) and worsen over time. While defendant asserts that plaintiff will need only oral pain medication for the remainder of her life, the evidence proved otherwise. The expert testimony established that plaintiff will not only need to increase the amount of pain medication she will take over time due to an increased tolerance, but will also need prescription sleep aids and antidepressants because of her CRPS.

¶ 32    In that same vein, while defendant maintains that plaintiff will only need future office

visits with pain management specialists, the record demonstrates that she will need to be treated by a variety of physicians. Plaintiff is currently under the care of two pain management specialists, Dr. Goodman and Dr. Lubenow. The cost of an office visit with Dr. Lubenow is almost twice as high as those with Dr. Goodman. She is also in need of continuing psychiatric care. It is reasonable to infer from the evidence that she also will likely need further medical treatment as her condition progresses and worsens over time, including surgery and postoperative care.

¶ 33    In regards to her spinal cord stimulator, the evidence established that the treatment options for CRPS are advancing at a rapid rate, and therefore plaintiff may benefit from a replacement spinal cord stimulator in the future. We also note that defendant's argument that the spinal cord stimulator battery replacement is a "minor medical procedure" is not a complete, accurate reflection of the evidence. In fact, Dr. Lubenow testified that it was a minor *surgical* procedure, which involves a sterile environment and requires plaintiff to be placed under anesthesia.

¶ 34    Additionally, testimony from defendant's witnesses provides support for other future medical expenses. Dr. Candido testified that the best treatment for CRPS is physical therapy, an avenue plaintiff had tried in the past. Thus, one could reasonably infer from the evidence that plaintiff may need to reengage in physical therapy in the future. Dr. Candido also testified about opioid-induced hyperalgesia in the future, a condition wherein the opioid pain medication an individual is taking to treat pain in fact causes the pain to become worse over time. According to Dr. Candido's testimony, plaintiff has opioid-induced hyperalgesia, and the evidence at trial established that this condition can exist contemporaneously with CRPS. While plaintiff's physicians testified that she did not suffer from opioid-induced hyperalgesia, a reasonable

inference exists that she may need treatment for such a condition in the future. Furthermore, plaintiff presented evidence that she sought to decrease the amount of opioid pain medication she was taking and that such a goal required the guidance of a physician. Thus, it is reasonable that the award include funds to provide for such future medical treatment.

¶ 35     Lastly, the jury was aware that plaintiff was 50 years of age at the time of trial and that she could potentially to live to be 99. Given the evidence that CRPS is a permanent, progressive condition, it is reasonable to consider the increase in medical costs and the number of treatments plaintiff would need to undergo as she advances in age.

¶ 36     In the instant case, we cannot say the trial court abused its discretion. When entering the remittitur, the trial court found that that $7.3 million jury verdict for future medical expenses was excessive because it was not reasonably based on the evidence. In making this finding, however, the trial court did not discredit the jury's desire to fully compensate plaintiff for her permanent and progressive injury and awarded her $3.65 million. While the trial court did not expressly set forth its calculation for the $3.65 million award, when one considers the $300,000 past medical expenses stipulation—which was incurred over four-and-a-half years ($66,666 per year)—and multiplies it by plaintiff's life expectancy of 49 years, the calculation is roughly the amount of the remittitur ($3.62 million). We observe that in rendering such a verdict, the jury is given great deference and discretion. See *Richardson*, 175 Ill. 2d at 113. However, the trial court, when entering a remittitur on that verdict, is given the same deference by this court. See *House v. Stocker*, 34 Ill. App. 3d 740, 746 (1975) ("A reviewing court has no power to intervene merely because the verdict is in excess of what the judges would have allowed had they heard the evidence and were to have made the original determination."); *Northern Trust Co. v. County of Cook*, 135 Ill. App. 3d 329, 335 (1985) (" 'Each verdict for a personal injury must be examined

in the light of the particular injury involved, with humble deference to the discretion of the jury in making its determination and to the ruling of the trial judge on the post-trial motions.' " (quoting *Lau v. West Towns Bus Co.*, 16 Ill. 2d 442, 453 (1959))). Accordingly, we cannot reverse a trial court unless it abuses its discretion. *Aguilar-Santos*, 2017 IL App (1st) 153593, ¶ 76.

¶ 37    In so concluding, we have considered the other cases relied upon by the parties and find that none of these cases contain facts that are directly applicable to the case at bar. Defendant relies on the cases of *Briante v. Link*, 184 Ill. App. 3d 812 (1989), and *Netzel v. United Parcel Service, Inc.*, 181 Ill. App. 3d 808 (1989), to demonstrate that a verdict without evidentiary support cannot stand. In *Briante*, a jury awarded the plaintiff $700,000 for serious and permanent personal injuries as a result of a vehicle collision. *Briante*, 184 Ill. App. 3d at 813. The $700,000 award contained an itemized award for past and future medical expenses in the amount of $56,000. *Id.*

¶ 38    On appeal, the defendants sought a remittitur or, in the alternative, a new trial on damages. *Id.* The defendants maintained that the evidence demonstrated that the plaintiff's past medical bills were $15,763.80 and that an additional sum of $6000 would be incurred in the future for a particular medical procedure, for a total of $21,763.80. *Id.* at 814. The defendants argued that the jury award exceeded the proven damages by $34,236.20. *Id.* In response, the plaintiff argued that the extra funds represented the cost of future physical therapy. *Id.* The reviewing court, however, disagreed with the plaintiff and found that the record did not reveal evidence of "a specific medical recommendation of a particular type of therapy *and* the cost and duration of the therapy." (Emphasis added.) *Id.* Citing *Seward v. Griffin*, 116 Ill. App. 3d 749 (1983), the reviewing court explained that "[s]ince this type of damage is susceptible to medical

opinion and mathematical computation, the additional award is not justified" and entered a remittitur. *Briante*, 184 Ill. App. 3d at 814.

¶ 39    In this case, defendant asserts the reasoning of *Briante* is applicable here where the costs of plaintiff's future oral pain medication, doctor visits, and spinal cord stimulator battery replacements were all readily susceptible to medical opinion and mathematical computation and plaintiff presented no such evidence. It is our view, however, that *Briante* does not control to the extent that *Briante* suggests that testimonial evidence *and* mathematical evidence are required to uphold a jury's verdict on future medical expenses. First and foremost, the *Seward* case relied on by the *Briante* court does not stand for the proposition that evidence of the exact amount of future medical expenses (which are susceptible to medical opinion and mathematical computation) must be presented at trial. In fact, nowhere in *Seward* does the subject of future medical expenses appear, let alone any discussion of medical opinion testimony or the mathematical computation of medical expenses. See *Seward*, 116 Ill. App. 3d at 757, 760 (discussing the propriety of an award for past medical expenses and whether other damages were in excess of the statutory limits set forth in the Dram Shop Act).

¶ 40    Second, we can find no case law where a court has ever relied on this proposition as set forth in *Briante* to reverse a jury award for damages related to future medical expenses. See *Aguilar-Santos*, 2017 IL App (1st) 153593, ¶¶ 69-71 (distinguishing the facts of *Briante* and upholding the jury's award for future medical expenses). Indeed, at oral argument, counsel conceded that such a mathematical computation is not necessary to render an award for future medical expenses. This is in line with our well-established case law, which provides that expert testimony is not necessary to establish the dollar amount of future medical expenses. See *Rainey*, 209 Ill. App. 3d at 907. Accordingly, we find defendant's reliance on *Briante* misplaced.

¶ 41 Defendant similarly relies on *Netzel*. In *Netzel*, a jury found in the plaintiff's favor and awarded him $200,000 in compensatory damages on his retaliatory discharge claim. *Netzel*, 181 Ill. App. 3d at 810. Thereafter, the defendant moved for and was granted a new trial on liability and damages. *Id.* at 811. The plaintiff appealed, arguing that a new trial was not warranted. While the reviewing court agreed with the plaintiff that a new trial on liability was improper, it upheld the trial court's decision regarding a new trial on damages. *Id.* at 813, 818. The *Netzel* court observed that, in closing argument, the plaintiff's counsel requested $54,800 for lost wages, $45,000 for lost benefits, and $150,000 for "loss of job." (Internal quotation marks omitted.) *Id.* at 818. The *Netzel* court found that the jury's compensatory damages award did not bear a reasonable relation to the loss suffered by plaintiff. *Id.* While there was evidence that plaintiff lost certain benefits due to his discharge, there was not sufficient evidence upon which the jury could reasonably and fairly compensate plaintiff for the value of those benefits. *Id.* In addition, the jury instructions did not allow the jury to award damages for the "highly speculative element of 'loss of job' mentioned by [the] plaintiff's counsel." *Id.* The court concluded it was "unable to determine the basis of the jury's damages award" and that the "verdict does not reflect the evidence at trial" or whether the jury's award improperly included the " 'loss of job' " element. *Id.*

¶ 42 *Netzel* is inapposite to the case at bar for various reasons. First, the jury in this case was provided with an itemized verdict sheet, and there was no line item for damages on which the jury was not instructed. Second, the *Netzel* court concluded that there was no basis for the award, whereas the record in this case discloses numerous bases on which the jury could have rendered its verdict, albeit for the reasons stated below not in the amount of $7.3 million. Third, and most importantly, *Netzel* does not offer any guidance on how to determine the propriety of a jury

award (and a trial court's subsequent remittitur) of future medical expenses, which is the primary issue here.

¶ 43    Plaintiff relies on *Lewis v. Cotton Belt Route-St. Louis Southwestern Ry. Co.*, 217 Ill. App. 3d 94 (1991), which is similarly inapposite. There, the plaintiff was injured on the job when a load of railway ties struck him in the back. *Id.* at 98. The jury found in his favor and awarded him $175,000. *Id.* at 105. Out of this award the jury assessed approximately $10,000 for past medical expenses and approximately $105,000 for future medical expenses. *Id.* at 123. The defendant appealed the medical expenses award, arguing it was a product of passion and prejudice. *Id.* The reviewing court disagreed, pointing, in part, to the expert testimony that the plaintiff's injury was permanent and that he would have intermittent pain in the future, thus "the jury could reasonably have found that for the rest of plaintiff's life he would quite assuredly need access to some continuing medical care for his injury and that nearly $105,000 approximated the cost of that care over the next 34 years." *Id.* at 124.

¶ 44    The facts of *Lewis* are inapposite because defendant here is not appealing the jury verdict or the trial court's remittitur as being the result of passion or prejudice. See *id.* at 123. While plaintiff relies on *Lewis* to demonstrate that it is not unprecedented for a court to uphold a jury verdict for future medical expenses that is 10 times the award for past medical expenses, we observe that the jury verdict in this case was significantly more than 10 times the amount of past medical expenses. Moreover, the *Lewis* plaintiff testified that the reason his past medical expenses were low was because he could not afford to receive treatment at that time and the reviewing court concluded that "the jury could reasonably have assumed that plaintiff's past medical expenses could have been much higher and accordingly projected future medical expenses in an amount 10 times higher than the special damages." *Id.* This is not the case here

where we have testimony that plaintiff received medical treatments that she would not likely undergo in the future.

¶ 45    In sum, based on the record here, we cannot say that the trial court acted arbitrarily, fancifully, or so unreasonably that no person would take the position of the trial court when entering this remittitur. See *Hoffman*, 2017 IL App (1st) 170537, ¶ 53. While there was no expert testimony as to the express costs of plaintiff's future medical expenses, no such testimony is necessary. See *Rainey*, 209 Ill. App. 3d at 907. We must defer to the trial court in its award where the evidence reasonably supports such a finding and the record here, as detailed above, establishes that the remittitur was within the range of what the evidence would reasonably support. See *Young*, 2015 IL App (1st) 131887, ¶ 80. Accordingly, we affirm the judgment. Because we affirm the remittitur, we need not address the parties' argument that a new trial on damages is warranted.

¶ 46                                III. CONCLUSION

¶ 47    For the reasons stated above, the judgment of the circuit court of Cook County is affirmed.

¶ 48    Affirmed.

¶ 49    JUSTICE GORDON, specially concurring:

¶ 50    I agree with the majority opinion but I write separately to emphasize our standard of review in this case. To reverse this remittitur, we would have to find that no reasonable judge would have entered this remittitur. The medical expenses in this case were $300,000, and it is undisputed that plaintiff would require continued physical therapy, pain medication, and spinal cord stimulation for the rest of her life. The electrical leads of the spinal cord stimulator, which are anchored deep in the muscle, tend to migrate, which would require plaintiff to undergo

surgery to adjust the electric leads for the rest of her life. The batteries in the spinal cord stimulator would need to be replaced once every eight years through a minor surgical procedure, and plaintiff would need treatment from a pain medicine specialist for the rest of her life. In addition, the evidence showed that plaintiff was depressed and needed the services of a psychiatrist.

¶ 51    Plaintiff was 50 years old at the commencement of the trial and had a life expectancy of 99 years. The experienced trial judge reduced the $7.3 million award for future medical basically in half by awarding $3.65 million, which would be a little over $75,000 per year for her life expectancy of 49 years. That amount does not appear to be unreasonable, and certainly we cannot say that no reasonable judge would enter that remittitur under the facts of this case.